[Civ. No. 32720.   Second Dist., Div. Three.   Apr. 18, 1969.]

JULIANNE KEMPER BECKETT, Plaintiff and Respondent, v. WILLIAM SUTHERLAND BECKETT, Defendant and Appellant.

Michael B. Montgomery for Defendant and Appellant.

Fine & Pope and Alexander H. Pope for Plaintiff and Respondent.

SCHWEITZER, J. — Defendant husband appeals from order quashing writ of execution for monies allegedly due him for support and maintenance, pursuant to a provision of a property settlement and separation agreement, set forth in an interlocutory judgment of divorce and embodied in the final judgment of divorce. Plaintiff wife made all payments until defendant husband remarried and has refused to make payments thereafter, notwithstanding the annulment of defendant's remarriage by his second wife.

The parties hereto were married in 1948, separated in January 1957 and on April 19, 1957, entered into a property settlement and separation agreement, prepared by their respective attorneys. The agreement listed their separate property, set forth a division of community and joint tenancy property, provided for giving custody of the three minor children to the wife, and provided for support and maintenance payments by the wife from her separate property to the husband in the sum of $1,200 per month, commencing May 1, 1957, and "continuing monthly thereafter for the life of the Husband, but not to exceed a period of ten (10) years and six (6) months."

Shortly thereafter the wife filed suit for divorce. Following a default hearing she received an interlocutory judgment of divorce on the ground of extreme mental cruelty. The judgment granted her custody of the minor children, ordered her to make the support and maintenance payments to defendant husband as provided by the agreement, and approved the agreement in its entirety. The custody and support and maintenance provisions were set forth in the decree. The agreement was not incorporated into the decree. A final judgment of divorce was entered June 25, 1958, embodying the custody and support provisions of the interlocutory judgment. Neither judgment has been modified with respect to the support provisions.

On April 28, 1963, the defendant husband remarried. Plaintiff wife has refused ever since to make payments to him as provided by the agreement and the judgments. As of the date of his remarriage, plaintiff was not in default. On March 26, 1965, defendant's second wife obtained a decree of annulment of her marriage to him on the ground of fraud.

On March 2, 1967, defendant had a writ of execution issued against plaintiff, covering the support and maintenance payments that allegedly were due him from May 1, 1963, to the date of the writ. Plaintiff moved to quash and recall the writ on the ground that her alimony obligation was terminated by his remarriage on April 28, 1963. Following a hearing the court concluded: that the agreement was an integrated property settlement agreement; that the support and maintenance provisions "are true support and maintenance provisions and are not part of the disposition of the property rights of the parties"; that the agreement does not express any intent that the support and maintenance provisions are to continue subsequent to remarriage of defendant; that the support and maintenance provisions were merged into the interlocutory and final judgments of divorce; that defendant's second marriage was voidable; that the support and maintenance obligations of plaintiff terminated as of the date of defendant's remarriage, April 28, 1963, pursuant to the provisions of section 139, Civil Code; and that the support and maintenance provisions have been fully satisfied. The court ordered that the writ of execution be quashed and vacated.

Section 139 of the Civil Code provides in part: "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate . . . upon the remarriage of the other party." A property settlement

agreement is subject to the provisions of section 139 of the Civil Code. (*Hilton* v. *McNitt,* 49 Cal.2d 79, 81-83 [315 P.2d 1].) The agreement in this case is silent as to the subject of remarriage of either party.

Defendant contends that the evidence of his remarriage and subsequent annulment was insufficient for the trial court to conclude that the support obligations of the agreement had been terminated. He concedes that a marriage annulled on the ground of fraud is voidable, not void (see *Turner* v. *Turner,* 167 Cal.App.2d 636, 641 [334 P.2d 1011]) and recognizes the holdings of *Sefton* v. *Sefton,* 45 Cal.2d 872 [291 P.2d 439], and *Husted* v. *Husted,* 222 Cal.App.2d 50 [35 Cal.Rptr. 698], that, under section 139 of the Civil Code, a voidable marriage terminated the right to alimony and that such right did not re-arise on the annulment of such a marriage. However, defendant points out that Justice Shenk in *Sefton* stated that after the remarriage the former spouse could properly assume, in accordance with section 139, that the obligation to pay alimony had ceased, and based on this assumption would be entitled to recommit assets previously chargeable to alimony to other purposes. "*Under such circumstances* it would be improper to reinstate . . . [the support provisions]." (Italics ours.) (*Sefton* v. *Sefton, supra,* at p. 877.) Defendant argues that since plaintiff did not offer any evidence to show that she had changed her position to her detriment, she was therefore not entitled to have her obligation terminated pursuant to section 139.

We do not agree with defendant's contention. It appears to us that Justice Shenk made the reference to a possible hardship situation only as illustrative of one of the results that might occur if a contrary decision were reached. Our opinion is fortified by the dissenting opinion of Justice Edmonds wherein he argued that the trial judge should be given an area of discretion, a position in accord with defendant's contention. There was no need for this statement by Justice Edmonds if the majority were not of the opinion that section 139 was self-executing. It is likewise significant that the need for a showing of a change of circumstances was not mentioned in the later opinion of *Husted* v. *Husted, supra,* 222 Cal.App. 2d 50. Even if there be merit to defendant's contention, it is questionable whether the courts would apply the principle to the case of one who was not the innocent party in the voidable remarriage. It was his fraud that led to the annulment.

Defendant also cites *Cottam* v. *City of Los Angeles,* 184 Cal.App.2d 523 [7 Cal.Rptr. 734, 85 A.L.R.2d 238], wherein

the pension of the widow of a deceased police officer was restored following the annulment of her second marriage on the ground of fraud by her second husband. We do not agree that *Cottam* presents a comparable situation. The case involved the construction and application of the city's charter provisions. In doing so the court stated that pension legislation must be liberally construed and applied to the end that its beneficent results may be achieved. Further, it is noted in *Cottam, supra,* that the applicant was the innocent party in the second marriage.

██ Defendant next contends that the support provision in the agreement was integrated into and made a part of the property settlement, and hence may not be modified. ██ ''An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. Such an agreement would be destroyed by subsequent modification of a support order based thereon, without the consent of the parties.'' (*Plumer* v. *Plumer,* 48 Cal.2d 820, 824 [313 P.2d 549].)

The question of the severability of the support and property division provisions was discussed by Justice Tobriner in *Carson* v. *Carson,* 179 Cal.App.2d 665, 668-669 [4 Cal.Rptr. 38] : ''A court may modify the terms of a property settlement agreement which has been incorporated into a divorce decree if it finds the provisions of the agreement as to the disposition of the property and as to alimony to be severable. . . . Since the law fixes the extent of the obligation of support, that power of the court continues even if the parties themselves have agreed upon the amount of alimony and included it, among other and separable provisions, in a property agreement. (*Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15] ; *Adams* v. *Adams,* 29 Cal.2d 621 [177 P.2d 265.].)

''On the other hand, the court has no power to change the terms of a property settlement agreement that relates only to the division of the property. (16 Cal.Jur.2d 510-511.) Hence if in the agreement the provision for support is exchanged for a share of the community property, the agreement constituting an integrated all-embracing bargain, the court cannot modify its terms. . . .

''Thus the courts have been concerned with whether the agreement is in reality a settlement of property rights which includes as an integral part a support provision, or is nothing more than a separable support provision contained within the

agreement. Only in the latter instance do the courts, in the exercise of their long recognized authority and responsibility arising from the relationship of the parties, retain the power to determine the support, and to modify, if necessary, the settled amount.''

To determine whether the property and support provisions of the agreement ''constitute reciprocal consideration,'' we turn to the pertinent provisions of the agreement.

Paragraph I is an introductory paragraph, subparagraph (e) thereof providing: ''The parties hereto desire by this agreement to settle and adjust as between themselves their respective property rights, the custody of their minor children, and to make certain provision for the future support of the Husband of and from the separate property of the Wife.'' Paragraphs II-V list the separate, community and joint tenancy property, and paragraph VI their financial obligations. Paragraph VII provides waivers by each party of interests in the property of the other. Paragraphs VIII and IX set forth a division of the community and joint tenancy property of the parties, and provides for the execution by the husband of a note in favor of the wife. Paragraph X provides for the transfer by the wife of a $30,000 parcel of her separate real estate to the husband.

Paragraph XI is entitled ''Support of Husband'' and reads as follows: ''The wife is possessed of certain separate income derived from a trust established by members of the Wife's family. As part of this Settlement Agreement the Wife agrees to provide support and maintenance to the Husband in the sum of One Thousand Two Hundred Dollars ($1,200.00) per month, commencing on the 1st day of May, 1957, and continuing monthly thereafter for the life of the Husband, but not to exceed a period of ten (10) years and six (6) months from and after the date of the execution of this agreement.''

Paragraph XII provides for custody of the three minor children in the wife. Paragraph XIII is entitled ''Releases of Rights.'' The first unnumbered paragraph thereof reads as follows: ''Except as in this agreement otherwise provided, each party to this agreement does hereby release the other from any and all liabilities, debts or obligations of every kind or character, heretofore or hereafter incurred, and from any and all claims and demands, including all claims of either party upon the other for support or maintenance as Wife or as Husband, it being understood that this present agreement is intended to

settle the rights of the parties hereto in all respects." The remaining provisions of paragraph XIII contain waivers of liability for after-incurred debts, waivers of interest in after-acquired property, and waivers of rights in the event of a probate administration. Paragraphs XIV and XV provide for the execution of necessary instruments to carry the agreement into effect, and also makes the agreement binding on heirs and representatives. Paragraph XVI provides that each party shall bear his own attorney's fees and costs in the event of litigation. Paragraph XVII sets forth the effective date of the agreement and provides in part: "With approval of court, the provisions of Paragraphs XI [support of husband] and XII [custody of minor children] shall be made a part of any [divorce] decree rendered. . . ."

By stipulation the motion to quash was submitted to the trial court "on the file and declarations." The defendant has asked that in aid of interpretation we consider extrinsic evidence as set forth therein. Plaintiff objects to the consideration of such evidence, citing the parol evidence rule.

Section 1856 of the Code of Civil Procedure provides that, subject to several exceptions, when the terms of an agreement "have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties . . . no evidence of the terms . . . other than the contents of the writing . . . ." In *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641], Chief Justice Traynor speaking for the court recently discussed this subject, stating on pages 37-40: "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. . . .

"Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. . . .

"Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] . . . Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can

'place itself in the same situation in which the parties found themselves at the time of contracting.' . . . [Citations.] If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for . . .' [citations], extrinsic evidence relevant to prove either of such meanings is admissible.''

We therefore look to the agreement and to the extrinsic evidence to determine whether the agreement is ''fairly susceptible of either one of the two interpretations contended for,'' i.e. whether or not the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration.

A transcript of testimony of plaintiff at the default divorce hearing on June 12, 1957, was included in the papers submitted to the trial court. We note that plaintiff testified that she was a beneficiary of a family trust; that she was able and willing to support the three minor children of the marriage and also support defendant for a specified length of time; that defendant was a talented architect; that plaintiff had been ''helping him with his business to make it, to meet the payroll and pay drafting costs and this is a very crucial time in his career. The next ten years he is either going to be a great big success or he is not going to do much, and I would like to help him over this difficult time. He hasn't been feeling well lately. He has chronic hepatitis. . . .'' Plaintiff continued by testifying that defendant had his own office, that ''this year [1957] was the only year that he showed any sort of profit at all and that wasn't too large a one.''

Defendant, referring to declarations filed in connection with motions in the trial court, calls our attention to statements by plaintiff's attorney that it was ''an integrated property settlement agreement''; to statements by plaintiff that ''tax consequences to both parties'' were considered in effecting the agreement; to statements by defendant that after the division of the property, ''it was agreed that I was entitled to an additional $150,000.00,'' and that payment thereof as support and maintenance ''would have beneficial tax consequences'' and also would make it possible for plaintiff to make payments from trust income rather than trust principal.

Extrinsic evidence that ''tax consequences'' were the reason why the payments were called ''support and maintenance'' rather than ''property division,'' is not relevant to prove that the agreement ''is fairly susceptible of either one

of the two interpretations contended for." (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co., supra,* 69 Cal.2d 33, 40.) It does not aid in interpretation, but is an attempt to vary the terms of a written contract by explaining the motive of the parties in agreeing to those terms. "[E]xtrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract. . . ." (*Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co., supra,* at p. 39.) (See also *Yarus* v. *Yarus,* 178 Cal.App.2d 190, 203 [3 Cal.Rptr. 50].) However, even if we considered this extrinsic evidence, as requested by defendant, our conclusion would be the same.

Looking to the agreement we find that the community property consisted of household possessions, two automobiles and the assets of defendant's business (no stated valuation) ; the household possessions and cars were divided; defendant received his business. The joint tenancy property was divided so that plaintiff received one residence with a net equity of $42,000, and defendant received a residence with a net equity of $37,000. In addition, from her separate property plaintiff deeded to defendant a commercial building valued at $30,000. The agreement then provides for the plaintiff to pay defendant from her separate property support and maintenance of $1,200 per month for 10 years and six months (a total of $150,000) and that except for this provision, each party forever releases the other of claims of support.

Significant omissions from the agreement are noted. (1) There is no provision for child support; apparently this was to be furnished by the plaintiff from her separate property. (2) There is no provision relative to the effect of remarriage of defendant on plaintiff's support obligation. (3) There is no provision expressly stating whether the support provisions constitute reciprocal consideration for the property provisions. (4) There is no provision for modification of the support obligation.

We have examined the many authorities cited by counsel and will not be repetitious by restating the guiding considerations set forth therein. We note that even though defendant was found guilty of extreme mental cruelty in the divorce trial, he received by the agreement more than half of the community assets, slightly less than half of the joint tenancy property, a $30,000 parcel of real estate from plaintiff's separate property, monthly payments of $1,200 for 10 years, six months from plaintiff's separate estate, and also was relieved of the financial obligation of supporting his three minor chil-

dren. Parenthetically we note that except for defendant's own statement, we find no evidence to support his declaration that plaintiff was indebted to him in the sum of $150,000 or at all; the evidence indicates that plaintiff was very beneficent. The receipt of a disproportionate amount of property and benefits by the defendant results in an implication of intent that the monthly payments were not a reciprocal consideration for those provisions relating to a division of property. (*Biagi* v. *Biagi*, 233 Cal.App.2d 624, 632 [43 Cal.Rptr. 707].)

Other significant provisions that imply an intent that the monthly payments were for support and not the division of property are: the payments were to terminate on defendant's death; the agreement contained no express provision that the support provisions constituted reciprocal consideration for the property provisions; and the provision for support was separately stated in the agreement from the provisions thereof relating to the division of property. (*Biagi* v. *Biagi, supra,* 233 Cal.App.2d 624, 629-630; *Roberts* v. *Roberts,* 226 Cal.App. 2d 507, 517 [38 Cal.Rptr. 176].) Paragraph I(e) of the agreement, quoted above, provides that the purpose of the agreement is "to settle and adjust between themselves their respective property rights, the custody of their minor children, and to make certain provision for the future support of the Husband of and from the separate property of the Wife," a clear statement of intent that the support provisions were severable from the property division provisions.

We conclude that the support and maintenance provisions of the agreement were not reciprocal consideration for the property provisions thereof, that the support and maintenance provisions were merged into the interlocutory and final judgments of divorce, that the support and maintenance provisions are subject to the provisions of section 139 of the Civil Code, that the obligation of plaintiff to make support and maintenance payments to defendant terminated upon his remarriage on April 28, 1963, that his remarriage was voidable and that the annulment thereof did not restore his right to support and maintenance from plaintiff. The order quashing and vacating the writ of execution is affirmed.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied May 6, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 11, 1969.