[Civ. No. 1850. Fifth Dist. May 16, 1974.]

In re the Marriage of EVA L. and MINAS E. NICOLAIDES.
EVA L. NICOLAIDES, Appellant, v.
MINAS E. NICOLAIDES, Respondent.

**COUNSEL**

Victor M. Cox for Appellant.

Mack, Bianco, Means & Mack and H. C. Mack, Jr., for Respondent.

## OPINION

**FRANSON, J.—**

### FACTS

On June 11, 1969, after 15 years of marriage, respondent husband filed an action for divorce against his wife, the appellant. On June 18, 1969, the parties entered into a marital settlement agreement. The essential provisions of the agreement were that respondent husband would receive custody of the minor children and receive as his share of the marital property a 1968 automobile, $1,000 in cash, 30 shares of Litton Corporation common stock and certain household furniture; appellant wife was to receive a 1968 automobile, approximately $4,000 in cash from the sale of their residence and certain household furniture. The husband agreed to pay all obligations incurred by the parties prior to the date of separation including payments on the wife's automobile.

A support clause provided that the husband pay the wife "for her support and maintenance, and as and for alimony" $350 per month for a period of three years and $250 per month for a period of two years. Payments were to begin in July 1969 and continue through June 1974. No provision was made for termination of support payments in the event of the death or remarriage of the parties.

The agreement expressly provided that it was the purpose of the parties "to make an integrated agreement to effect a final and complete settlement of [their] rights with reference to each other, including [their] respective property rights and to provide for the future support of wife and the minor children." The parties further provided: "[E]xcept as otherwise provided in this agreement, each of us releases the other from any and all liabilities, debts and obligations of every kind and character, that have been or will be incurred, and from any and all claims and demands, including all claims that either of us may have upon the other for support and maintenance as wife or as husband, it being understood that by this present agreement, we intend to settle all aspects of our marital rights." The last paragraph of the agreement stated that "this agreement is entire. We may not alter, amend or modify it except by an instrument in writing executed by both of us, and includes all representations of every kind and nature made by each of us to the other. This agreement shall be binding upon and enure to the benefit of both of us and of our heirs, executors, administrators, successors and assigns." The agreement was apparently prepared by the husband's attorney.

On July 23, 1969, respondent husband obtained an interlocutory judgment of divorce in a default proceeding. The interlocutory judgment approved the property settlement agreement and ordered "all terms and conditions" carried into effect by the parties. However, unlike the agreement, the interlocutory decree included a provision that the support obligation should continue through June 1974 *"unless terminated at an earlier time by death or remarriage of [the wife]."* Copies of the interlocutory decree were mailed by the husband's attorney to the wife's attorney.

On January 15, 1970, a final judgment dissolving the marriage was entered. On May 9, 1970, the wife remarried.

On April 5, 1971, the wife filed a notice of motion for order *nunc pro tunc* to conform the interlocutory and final decrees to the terms of the property settlement agreement on the basis of extrinsic fraud or mistake. The wife's declaration in support of her motion states that she did not appear at the default divorce proceeding because she had reached an understanding with the husband that the property settlement agreement would be presented to the court and incorporated into the interlocutory decree with no changes; that based on that understanding she allowed the hearing to proceed without being present or represented by counsel and that if she had known the terms of the property settlement agreement would be altered she would have been present in court to protect her interests. She further states that she did not know or realize that there was a difference between the property settlement agreement and the interlocutory decree in respect to the payment due her until approximately November of 1970 when she requested her new attorney to attempt collection of the amounts past due under the agreement.

A declaration of her former attorney states that about August 11, 1969, he received from husband's attorney two copies of the interlocutory decree and that he assumed the decree conformed to the marital agreement with which he was only "vaguely familiar"; he acknowledges that a copy of the decree was forwarded to wife.[1]

On May 1, 1972, the trial court entered an order denying wife's motion to conform the judgments to the property settlement agreement. The wife has appealed from this order under Code of Civil Procedure section 904.1, subdivision (b) as an order made after judgment. (See *Rooney* v. *Vermont*

---

[1]He also states that at the time he was not the attorney of record for wife; however, he had represented her in a divorce action she had filed against husband about the same time husband's action was filed and apparently had advised wife in connection with the marital agreement here involved.

*Investment Corp.,* 10 Cal.3d 351, 358-359 [110 Cal.Rptr. 353, 515 P.2d 297].)

DISCUSSION

■ Property and support provisions of an integrated marital settlement agreement which have been incorporated into a decree of divorce may properly be set aside or modified after the time for appeal or other direct attack has expired upon a showing of extrinsic fraud or mistake relating to those provisions. (*Lopez* v. *Lopez,* 63 Cal.2d 735, 737-738 [48 Cal. Rptr. 136, 408 P.2d 744]; *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18-23 [193 P.2d 728].) ■ Where extrinsic fraud or mistake is present the concept of divisible divorce permits the court to effect changes as to the property divisions of a divorce decree without disturbing that part of the decree terminating the marriage. (*Lopez* v. *Lopez, supra,* at p. 737; *Hull* v. *Superior Court,* 54 Cal.2d 139, 147-148 [5 Cal.Rptr. 1, 352 P.2d 161].)

■ Extrinsic fraud usually arises where a party is denied a fair adversary hearing because he or she was in some way fraudulently prevented from presenting a claim or defense. Where the ground of relief is not so much the fraud or misconduct of the defendant as it is the *excusable neglect* of the party to appear and make the proceeding a fair adversary hearing, the basis for equitable relief is extrinsic mistake. (*Kulchar* v. *Kulchar,* 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) The wife's declaration that she did not appear at the divorce proceeding because she had reached an understanding with husband that the property settlement agreement would be presented to the court and incorporated into the interlocutory decree without change, is unchallenged. Although she probably would have discovered the variance through a detailed examination of the decree, her failure to do so is excusable. Nothing was done to call her attention to the fact that the decree provided for termination of support payments if she remarried (see *Lopez* v. *Lopez, supra,* at p. 737) and the decree, on its face, purported to carry into effect "all terms and conditions" of the agreement.

■ It has also been held that where a marital settlement agreement is entire or "integrated," the court ordinarily must approve or disapprove the entire agreement. (See *Wright* v. *Wright,* 148 Cal.App.2d 257, 270 [306 P.2d 536]; 3 Witkin, Summary of Cal. Law (7th ed. 1960) Husband and Wife, § 132, p. 2675.)

In *Plumer* v. *Plumer,* 48 Cal.2d 820, 824-825 [313 P.2d 549], the court

discussed the concept of an integrated agreement: "An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. . . . It is immaterial whether or not the marital property is divided equally. . . . [Citations.] It is immaterial that the amount of the marital property is small. . . . [Citation.] It is likewise immaterial that the agreement calls for payments for 'support' or 'alimony.' . . . [Citation.]" The court went on to state: "An agreement providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement, will be deemed conclusive evidence that the parties intended an integrated agreement. [Citations.]" ■ It has also been held that an express waiver by the wife of a right to support and maintenance other than as provided in the agreement is persuasive evidence that the support provisions are inseparable from the property division provisions. (See *Dexter* v. *Dexter,* 42 Cal.2d 36, 41 [265 P.2d 873]; *Biagi* v. *Biagi,* 233 Cal.App.2d 624, 631 [43 Cal.Rptr. 707].) ■ The absence of any statement that the support provisions constitute reciprocal consideration for the property provisions is not conclusive if there is other proof of the parties' intent. (See *Plumer* v. *Plumer, supra,* 48 Cal.2d 820, 825; *DiMarco* v. *DiMarco,* 60 Cal.2d 387, 391-392 [33 Cal.Rptr. 610, 385 P.2d 2]; cf. *Beckett* v. *Beckett,* 272 Cal.App.2d 70, 78-79 [77 Cal.Rptr. 134].)

■ Whether the parties intended an integrated bargain must be ascertained from the terms of the agreement and any extrinsic evidence received in aid of its interpretation. ■ In the absence of conflicting extrinsic evidence as to the meaning of the agreement, the question of whether the parties intended an integrated bargain is one of law and the trial court's interpretation is not binding on the appellate court. (See *Messenger* v. *Messenger,* 46 Cal.2d 619, 626 [297 P.2d 988]; *Biagi* v. *Biagi, supra,* 233 Cal.App.2d 624, 628.) ■ Although extrinsic evidence received in the present case consists of affidavits from which perhaps conflicting inferences can be made, the evidence is not in conflict so as to raise questions involving its credibility.[2] For this reason we must independently determine

---

[2]The wife's affidavit in substance merely states that she and her husband had agreed that the settlement embodied in the agreement would be presented to the court for approval "with no changes." Husband did not file a declaration; however, his attorney

the meaning to be given to the agreement. (*Estate of Dodge,* 6 Cal.3d 311, 318, fn. 4 [98 Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Messenger* v. *Messenger, supra,* 46 Cal.2d 619, 626.)

Because the instant agreement expressly states that its purpose is to make an *integrated agreement* to effect a final and complete settlement of property and support rights, that except as therein provided each party releases the other from all claims for support and maintenance, that the parties intend to settle all aspects of their marital rights and waive their right to modify the agreement, and because it is expressly made binding on the heirs and representatives of the parties, we conclude that the bargain for support and property division was inseparable and integrated. For this reason the trial court was not free to add a qualifying term to the provisions for support.

The husband contends that even if the provision for early termination of payments had not been added to the interlocutory decree his obligation to make the support payments automatically terminated by operation of law upon wife's remarriage. At the time the agreement was executed, Civil Code section 139 provided in part: "*Except as otherwise agreed by the parties in writing,* the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." (Italics added. Effective Jan. 1, 1970, section 139 was repealed and reenacted as Civ. Code, § 4801, subd. (b).)

In support of his argument, husband cites *Hilton* v. *McNitt,* 49 Cal.2d 79 [315 P.2d 1], where the parties entered into a property settlement agreement which provided that the husband would pay $300 per month for support of the wife from August 1, 1953, until July 1, 1956; no provision was made for early termination of support payments in the event of the husband's death or the wife's remarriage. The agreement in *Hilton* provided that the parties intended to effectuate a final settlement of their *property rights* and each waived all claims against the other "arising out of the marital relation." In July 1954 the husband died and in September 1954 the wife remarried. In concluding that the wife's support payments

---

filed a declaration which, insofar as pertinent to this appeal, merely states that *at the time the interlocutory judgment was entered,* husband and his attorney intended the "purpose" of the support provision was to provide for wife's needs for a fixed period of time or until she should die or remarry. Neither declaration purports to express the intention or understanding of the parties at the time of contracting, nor do they contain evidence of the conversations between the parties, nor any other circumstance to aid in interpreting the language of the agreement.

terminated upon the death of the husband, the majority opinion said: "Inasmuch as the amendment [to Civil Code section 139] is specific to the effect that *'Except as otherwise agreed by the parties in writing'* the obligation of the husband shall cease upon his death or the remarriage of the wife we must hold that since neither the agreement nor the decree here provided that the monthly support payments were to continue beyond the death of the obligor or the remarriage of the obligee plaintiff may not prevail . . . . [H]ad the parties intended that Mrs. Hilton was to receive a certain sum of money without regard to her remarriage or the obligor's death it would have been a simple matter to make their intentions known in the property settlement agreement." (49 Cal.2d at p. 82.)

The majority in *Hilton* further held that the statutory provisions for early termination of support upon the death of the obligor or remarriage of the other party were applicable whether or not the property settlement agreement was integrated. Three justices dissented, holding that while the statute applied to integrated as well as severable support agreements, by providing that the payments would continue until July 1, 1956, the parties had "otherwise agreed."[3]

In *Rheuban v. Rheuban,* 238 Cal.App.2d 552 [47 Cal.Rptr. 884], the court considered the *Hilton* doctrine in the interpretation of a property settlement agreement containing provisions comparable to those in the present case. The parties in *Rheuban* agreed that the husband would pay, as a division of community property, $40,000 payable in monthly installments of $350 and would make support payments to the wife in the sum of $750 per month for 128 months. The agreement provided that the parties intended to make the support provision part of the consideration for the transfer of the property, that the support should remain fixed and both parties expressly waived any future right to modify the support provision. After the wife's remarriage, the husband filed a motion to modify the divorce decree to terminate support payments. The court noted that under the majority opinion in *Hilton,* the bare fact that payments were to continue for a fixed period did not prevent them from being reduced by application of section 139, but then said: ". . . the agreement and decree before us

---

[3]It is interesting to note that after the decision in *Hilton,* further proceedings were held by the trial court to resolve questions relating to a latent ambiguity in the agreement which were not before the Supreme Court. When the case was again appealed in *Hilton v. McNitt,* 200 Cal.App.2d 879 [19 Cal.Rptr. 688], the reviewing court upheld the trial court's finding, based on extrinsic evidence which was not presented at the first trial, that the payments to the wife were intended to be periodic payments of her share of the community property rather than payments for support and, as such, did not terminate upon the husband's death or the wife's remarriage. The Supreme Court denied a hearing.

go much farther than the language used by the Hiltons. Not only was there express provision that the payments were to survive death,[4] but, . . . each party expressly waived 'any future right to any change or modification of the provisions for . . . alimony and support.'

"The agreement now before us says, as clearly as words could say, that it was the definite intention of the parties that the payments provided for by paragraph II should continue for the full 128 months agreed upon, no matter what happened. Unless we are to hold that the application of section 139 can be obviated only by an agreement which not only is in writing but which uses a magical formula that includes the exact words 'remarriage' and 'death,' the language used by the Rheubans is sufficient to show that (in the words of the opening clause of the statutory paragraph relied on) they had 'otherwise agreed.' We can see no reason why, if the intent of the parties is clear, any particular words should be required to accomplish their purpose; the agreement here complied with the statutory requirement." (238 Cal.App.2d at p. 557.) (See also *Tremayne* v. *Striepeke,* 262 Cal.App.2d 107, 115-116 [68 Cal.Rptr. 470].)

*Rheuban* is a logical and sound extension of the holding in *Hilton.* ▮ It explains that where there is evidence in addition to the promise to pay for a specified period from which it reasonably may be concluded that the parties intended the payments to continue after remarriage of the wife, *Hilton* does not require that the payments terminate simply because the parties *literally* do not provide otherwise. By ascertaining from the agreement as a whole the parties' true intention as to whether the support payments should terminate on the wife's remarriage, the court effected a just result in keeping with the legislative policy expressed in Civil Code section 139.

Like *Rheuban,* the agreement in the instant case goes farther than the *Hilton* agreement in that the parties expressly waived any rights to modify the agreement except by an instrument in writing and the agreement was made binding on the heirs and representatives. ▮ The parties and their attorneys are presumed to know the law applicable to property settlement agreements at the time the agreement is executed and, in the absence of evidence to the contrary, should be presumed to understand the consequences of the terminology used. (See *Hilton* v. *McNitt, supra,* 49 Cal.2d 79, 82.) ▮ From the four corners of the agreement we conclude

---

[4]This finding is apparently based on the language in the agreement that it is to be binding on the heirs and personal representatives of both parties. A similar provision is included in the instant agreement.

that the parties intended the support payments to continue for the five-year period regardless of whether the wife remarried during the interim.

■ The husband's contention that the wife is barred from seeking modification of the divorce judgments by the doctrine of laches is without merit. ■ The defense of laches requires unreasonable delay plus either acquiescence in the act about which the plaintiff complains or prejudice to the defendant resulting from the delay. (*Conti* v. *Board of Civil Service Commissioners,* 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617]; *Pennel* v. *Pond Union School Dist.,* 29 Cal.App.3d 832, 840 [105 Cal. Rptr. 817].) No presumption of prejudice arises from the mere lapse of time. (*Conti* v. *Board of Civil Service Commissioners, supra,* at p. 359.) ■ There is no evidence to suggest that the wife acquiesced to the re-marriage limitation placed upon her support payments by the interlocutory judgment. The declaration of her then attorney states that when he received the copies of the decree in August 1969 and forwarded one to wife, he assumed the decree conformed to the marital agreement and did not advise her of the variance. The wife states in her declaration that she did not realize that there was a difference between the decree and the agreement until November 1970 when she requested her attorney to attempt to collect the amounts past due.[5] Shortly thereafter her attorney initiated the action to conform the decrees to the agreement.

The husband asserts that he was prejudiced by the delay because he moved to Connecticut after the divorce proceeding and was not available to personally participate in subsequent proceedings. However, his attorney appeared on his behalf and opposed wife's motion and the husband does not explain what he might have added had he been personally present. ■ To show prejudice for the purpose of laches the party asserting the defense must show he did or omitted to do something which detrimentally altered his position *with respect to the claim or right asserted.* (*South* v. *Wishard,* 146 Cal.App.2d 276, 288-289 [303 P.2d 805]; *Nevarez* v. *Nevarez,* 202 Cal.App.2d 596, 603 [21 Cal.Rptr. 70].) The defense cannot be maintained on the basis of a possible hardship arising from a collateral matter without any connection to the claim involved.

The order denying the wife's motion to conform the interlocutory and final judgments of divorce to the terms of the property settlement agreement is reversed. The matter is remanded to the trial court with directions

---

[5]It does not appear that the wife was put on notice of the remarriage termination provision by the husband's cessation of payments after she remarried. By the time the divorce was final in January 1970 (and four months before the wife remarried) husband was approximately $1,000 behind in support payments.

to amend the interlocutory and final judgments by deleting from the support provisions in favor of the wife, the words "unless terminated at an earlier time by death or remarriage of the defendant."

Brown (G. A.), P. J., and Gargano, J., concurred.