[Civ. No. 45794. Second Dist., Div. Two. July 22, 1975.]

MONA EMANUEL, Plaintiff and Appellant, v.
WILMA J. EMANUEL, as Co-executor, etc., et al.,
Defendants and Respondents.

COUNSEL

McAlpin, Burthe & Solder, V. J. McAlpin, Forster, Gemmill & Farmer, John G. Gemmill and John W. Powell for Plaintiff and Appellant.

Horace B. Comstock for Defendants and Respondents.

OPINION

**COMPTON, J.**—On October 24, 1957, Mona Emanuel obtained an interlocutory decree of divorce from her then husband Vincent Emanuel. That decree approved a property settlement agreement between the parties and ordered performance of its executory provisions.

One of those provisions provided that "[Vincent Emanuel] promises and agrees to pay to [Mona Emanuel] for her support and maintenance and as alimony, the sum of Four Hundred ($400.00) Dollars per month, commencing on the fifteenth day of October, 1957, and continuing thereafter on the fifteenth day of each succeeding month until the death or remarriage of [Mona]."

On February 9, 1974, Vincent died. Wilma Emanuel and the United California Bank are the co-executors of his estate. Mona filed a claim

against the estate for $69,000 which is the aggregate of $400 per month for 14.5 years—Mona's statistically computed life expectancy. The co-executors rejected her claim.

Mona next commenced the instant action to enforce the rejected claim. The trial court sustained a demurrer to her complaint without leave to amend and dismissed the action pursuant to Code of Civil Procedure section 581, subdivision 3. Mona appeals from the order sustaining the demurrer and the judgment of dismissal. The order is not separately appealable but is reviewable on appeal from the judgment of dismissal.

Appended to the complaint as an exhibit is the property settlement agreement which contains a provision which was not carried forward in the interlocutory decree, but which is crucial to the resolution of the validity of Mona's claim. That provision reads as follows:

"12. AGREEMENT BINDING ON SUCCESSORS: All of the covenants, provisions, conditions and agreements in this instrument contained shall apply to and be binding and obligatory upon, and shall inure to the benefit of not only the parties hereto but also their respective heirs, executors, administrators and assigns."

Civil Code section 139 (now Civ. Code, § 4801, subd. (b)) at the time provided in part: "*Except as otherwise agreed by the parties in writing,* the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." (Italics added.)

The above quoted provision was the result of legislative amendment in 1951 which in effect reversed the previous approach to the problem which was that a provision for support in a divorce decree based on an integrated property settlement agreement did not terminate on the death of the husband or the remarriage of the wife unless the parties agreed otherwise.

The 1951 amendment was confronted in *Hilton* v. *McNitt,* 49 Cal.2d 79 [315 P.2d 1], a case where the parties had agreed in a divorce settlement that the husband would pay $300 for a specific period of time. The court there refused to require the husband's executor to continue the payments after his death since both the decree and the agreement were silent on the point.

Subsequently, however, *Rheuban v. Rheuban,* 238 Cal.App.2d 552 [47 Cal.Rptr. 884], and *In re Marriage of Nicolaides,* 39 Cal.App.3d 192 [114 Cal.Rptr. 56], both held that no particular words were required to constitute an agreement within the purview of the statute so long as the parties' intent was clear or *"there is evidence in addition to the promise to pay* for a specified period from which it reasonably may be concluded that the parties intended the payments to continue . . ." (*In re Marriage of Nicolaides, supra,* at p. 202) beyond the death of the obligor or remarriage of the other party. (Italics added.)

Since the instant case has reached our attention as the result of the sustaining of a demurrer, the question is, simply put, can it be said, as a matter of law, that the provision of the agreement upon which Mona relies is not reasonably susceptible of being interpreted as an agreement that Vincent's obligation to pay the specified support payments would survive his demise?

The co-executors characterize the provision in question as a "boiler plate" general provision and contend that it does not meet the requirements of Civil Code section 139 (Civ. Code, § 4801, subd. (b)) calling for an agreement in writing expressly negating the statutorily mandated termination.

The logical extension of *Rheuban* and *Nicolaides, supra,* however, is that like any other contract which requires interpretation to ascertain the intent of the parties, an agreement such as the one here may require the resort to extrinsic evidence to determine the true intent of the parties. (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Delta Dynamics, Inc. v. Arioto,* 69 Cal.2d 525 [72 Cal.Rptr. 785, 446 P.2d 785]; *American-Hawaiian Steamship Co. v. Home Sav. and Loan Assn.,* 38 Cal.App.3d 73 [112 Cal.Rptr. 897].)

■ Thus Mona contends that her complaint should survive a demurrer and that she should have an opportunity to offer evidence that the intent of the contracting parties was that the payments would continue after Vincent's death. With this we disagree. In order to invoke such an extension of *Hilton, Rheuban* and *Nicolaides* there must be some language in the agreement which can reasonably be interpreted as declaring an intent to comply with the "otherwise agreed" requirement of Civil Code section 4801. That is not the case here.

To begin with, it is clear from the provisions of the agreement that the payments at issue were for *support* and were not to compensate Mona for her part of the community property. Secondly, Mona is urging a construction of the agreement which would be in derogation of a strong and contrary legislative policy of terminating such payments on the death of the obligor. Lastly, liberality in permitting an ex-spouse, after the death of the other, to offer evidence that the parties intended a support obligation to survive the death of the obligor has great potential for mischief.

It must be remembered that the agreement here was executed after the decision in *Hilton* v. *McNitt, supra.* The decree, which is silent on the subject of survival, also came after that decision. Presumptively the attorneys who drafted the agreement and the judge who issued the decree were aware of the Supreme Court's strict interpretation of the statute. In that context it seems unlikely that such a significant provision in the agreement would have been relegated to a general catch-all clause such as the one on which Mona relies.

If the parties truly intended the result for which Mona contends it would have been a simple matter to spell it out in the agreement and to have such provision incorporated in the decree instead of sowing the seeds of future litigation in the soil of vague "boiler-plate" language untended by the parties and hidden from the judge.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1975.