[Civ. No. 46742. Second Dist., Div. Five. Jan. 30, 1976.]

In re the Marriage of BETTY JANE and ROBERT JOHN WRIGHT.
BETTY JANE WRIGHT, Appellant, v.
ROBERT JOHN WRIGHT, Respondent.

COUNSEL

Brelsford, McMahon, Butcher & Loberg and Dennis D. Butcher for Appellant.

Ruth Sward for Respondent.

OPINION

KAUS, P. J.—Spousal support modification proceeding. Petitioner Betty Jane Wright appeals from trial court orders granting the petition of respondent Robert John Wright to reduce his spousal support obligations and denying Betty's motion to strike that petition.

FACTS

The parties were married in 1942 and separated permanently in 1971. In July 1971 they stipulated to a division of community property and to provisions for spousal support and child support. The trial court accepted the stipulation, inserting in the judgment prepared by Betty's attorney and approved by Robert's attorney, where appropriate, the word "ordered."[1]

In brief, the judgment awarded custody of the two minor children to Betty, divided the property with no indication of the value of that property, and provided for child support. Also, as relevant to this appeal, the judgment provided that "[Robert] is ordered to pay [Betty] the sum of $250.00 per month spousal support, . . . commencing 1 June 1971, and terminating in all events and permanently in 8 years."[2] The interlocutory judgment was filed in July 1971.

In December 1974, Robert filed a petition to reduce his spousal support obligations. Betty responded with a motion to strike the petition on the ground that the provision for spousal support was not modifiable.[3]

---

[1]E.g., "Respondent is [ordered] to pay the community debts . . . ."

[2]Another paragraph provided that starting January 1, 1972, and also "terminating in all events and permanently in eight years," Robert would pay Betty 30 percent of his net earning in excess of $8,000 per year. At the modification hearing, the parties stipulated that this paragraph "shall be of no force and effect from and after January 1, 1975."

[3]Since it is Betty's position that the provision was nonmodifiable—not ·that the modification, if lawful, was improper—the factual circumstances need not be detailed.

Betty's attorney conceded at the hearing that there was neither a written agreement, nor an oral agreement made in court, that the spousal support provision was not modifiable. Nevertheless, he asked for "an opportunity to produce some parol evidence on the question of what was the intention of the parties at the time this agreement was entered into." The court denied the motion.

## DISCUSSION

Betty's threshold contention—that the stipulation constitutes an unmodifiable integrated property settlement agreement—can be disposed of quickly. ■ The stipulation does not conform to any integrated property settlement agreement we have ever seen: It disposes of the property and defines support obligations, but lacks entirely any statement of purpose, intent, finality or integration.[4] In brief, whatever the stipulation is, it is not an "unmodifiable integrated property settlement agreement."

The serious issue raised by Betty is whether the trial court erred in refusing to allow extrinsic evidence to show that the parties intended that the spousal support provisions be nonmodifiable.

Civil Code section 4811, subdivision (b), provides in part as follows: "The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, . . . *except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary.*"[5] (Italics added.)

It is Betty's position that this language means nothing at all; that even where, as here, there is no written or oral agreement of record which "specifically provides" for nonmodifiability, the court can and should

[4]Compare, for example, the provisions in the agreement in *e.g., Plumer v. Plumer,* 48 Cal.2d 820, 822 [313 P.2d 549]; *Dexter v. Dexter,* 42 Cal.2d 36, 38-39 [265 P.2d 873]; *Adams v. Adams,* 29 Cal.2d 621, 622 [177 P.2d 265]; *In re Marriage of Nicolaides,* 39 Cal.App.3d 192, 196 [114 Cal.Rptr. 56]; *Tremayne v. Striepeke,* 262 Cal.App.2d 107, 111-112 [68 Cal.Rptr. 470]; *Rheuban v. Rheuban,* 238 Cal.App.2d 552, 553-555 [47 Cal.Rptr. 884].

[5]Civil Code section 4811, subdivision (b), applies to dissolution agreements, and parallels section 4801, subdivision (b), which provides that "[e]*xcept as otherwise agreed by the parties in writing,* the obligation of any party under any order or judgment" for support shall terminate upon death, or the remarriage of the supported party. (Italics added.)

infer it from the *substance* of the provisions, or, at a minimum, permit extrinsic evidence to support such an inference.[6] ■■■ We disagree and conclude that, consistent with the purposes of the Family Law Act, a provision in a dissolution agreement that lacks any explicit statement of finality, may not be interpreted through extrinsic evidence intended to prove that the agreement or provision was "final."

The historical problems in determining nonmodifiability or finality have been summarized by Witkin:

"Under the law prior to . . . 1967 . . . an 'integrated' (nonseverable) property settlement agreement, approved by the court and incorporated in the decree, was not thereafter subject to modification. It was necessary, therefore, to determine in each case whether the decree merely incorporated an integrated, nonmodifiable property agreement or a hybrid, including a severable and modifiable support award based on the terms of an agreement. [¶] The task would have been simple if the parties and the judge, as repeatedly advised by courts and writers, had stated their intent in express and unambiguous language. [Citations.] But in many cases no such express language was found, and the determination was made by construction." (6 Witkin, Summary of Cal. Law (8th ed. 1974), Husband and Wife, § 196, p. 5065.)

"The difficult problem of interpretation posed by the varying language of agreements and orders was the subject of much critical comment, and the 1967 Legislature produced a simple solution by the addition of language to former C.C. 139, now C.C. 4811(b). . . ." (*Id.,* at § 198, p. 5070.)

Actually the language in section 4811, subdivision (b), which excepts law-imposed duties "to the extent that any written agreement . . . provides to the contrary" has been with us in substance since 1951.[7] The provision in former section 139 was construed in *Hilton v. McNitt,* 49 Cal.2d 79 [315 P.2d 1], in which the court rejected a contention that a particular agreement was an integrated property settlement agreement, subject to then section 139: "Inasmuch as the amendment is specific to

---

[6]Thus, Betty relies on that portion of the spousal support provision which states that such support shall terminate "in all events and permanently in 8 years," as indicating a tradeoff by Betty of lifetime support at an uncertain level for eight years at a fixed level.

[7]See former Civil Code section 139, as amended, Statutes of 1951, chapter 1700, section 7, page 3912; repealed Statutes of 1969, chapter 1608, section 3, page 3313; added as sections 4801, subdivision (b) and 4811, subdivision (b); Statutes of 1969, chapter 1608, section 8, pages 3334, 3336.

the effect that *'Except as otherwise agreed by the parties in writing'* the obligation of the husband shall cease upon his death or the remarriage of the wife we must hold that since neither the agreement nor the decree here provided that the monthly support payments were to continue . . . plaintiff may not prevail . . . . It would appear that had the parties intended that [plaintiff] was to receive a certain sum of money without regard to her remarriage or the obligor's death it would have been a simple matter to make their intentions known in the property settlement agreement." (*Id.,* at p. 82. Italics in original.)

Although *Hilton* on remand (*Hilton* v. *McNitt,* 200 Cal.App.2d 879 [19 Cal.Rptr. 688]) and later cases (*In re Marriage of Nicolaides, supra,* 39 Cal.App.3d 192, 200-202; *Tremayne* v. *Striepeke, supra,* 262 Cal.App.2d 107, 115-116; *Rheuban* v. *Rheuban, supra,* 238 Cal.App.2d 552, 556) have made clear that no particular magic words are needed, none has held that silence will do.

The original purpose of the 1951 amendment to former section 139 is unclear.[8] ■ One purpose of the 1967 amendment to former section 139 and present section 4811, subdivision (b), was to make support provisions in agreements enforceable by contempt. (*Tilghman* v. *Superior Court,* 40 Cal.App.3d 599, 606-612 [115 Cal.Rptr. 195].) ■ Another purpose of section 4811, subdivision (b)—and companion section 4801 (*ante,* fn. 5)—was to define clearly the law-imposed obligations of the parties, and to establish under what circumstances and in what manner the parties may deviate from those obligations.[9] Moreover, the overall

---

[8] One commentator speculated that the 1951 amendment to section 139 would apply to a *"severable* alimony clause in an *incorporated* property settlement agreement, . . . ." (1 Armstrong, Cal. Family Law, pp. 386-387. Italics in original.) *Hilton* v. *McNitt, supra,* 49 Cal.2d 79, 81, however, applied the proviso in then section 139 to a conceded "integrated property settlement agreement . . . ." (See also *Tremayne* v. *Striepeke, supra,* 262 Cal.App.2d 107, 112.)

[9] Thus, community property is to be immediately divided on dissolution, unless the parties agree in writing or orally in open court, or the court "expressly reserves jurisdiction . . . ." (§ 4800, subd. (a).) Community property personal injury damages are divisible only if received by the time of dissolution. (§ 4800, subd. (c); *In re Marriage of Pinto,* 28 Cal.App.3d 86, 89-90 [104 Cal.Rptr. 371].) The obligation to pay court-ordered support ends upon the death of either party or the remarriage of the recipient except "as otherwise agreed by the parties in writing . . ." (§ 4801, subd. (b).) Where there is an order for payment of an allowance for a specified period, that order "shall terminate at the end of the period specified in the order and shall not be extended unless the court, in its original order retains jurisdiction." (§ 4801, subd. (d); *Faught* v. *Faught,* 30 Cal.App.3d 875, 877-878 [106 Cal.Rptr. 751].) Finally, as discussed, spousal support provisions contained in an agreement are subject to modification unless there is a written agreement or oral agreement entered into in open court. (§ 4811, subd. (b).)

thrust of the Family Law Act is to restrict the scope for the often continuing litigiousness of former spouses.

 Thus, assuming that *Roberts v. Roberts,* 226 Cal.App.2d 507, 517 [38 Cal.Rptr. 176], holding that parol evidence is not admissible where there is no patent ambiguity in a purported integrated property settlement agreement, has generally been impliedly limited by *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage, etc. Co.,* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373] (see *Emanuel* v. *Emanuel,* 50 Cal.App.3d 56, 59 [123 Cal.Rptr. 249]), a rule that generously permits extrinsic evidence to vary the terms of a document that otherwise appears to be "plain and unambiguous on its face" (69 Cal.2d at p. 37) and which applies to ordinary contracts, should not apply in face of a legislative expression to the contrary, as reflected in the support provisions of the Family Law Act.

The requirement that litigants and their attorneys say what they mean is not arduous. In this case, a simple statement that the spousal support provision was not modifiable would have done nicely. Even a statement that the parties were exchanging a fixed period of support for a fixed amount of support would have satisfied the requirements of section 4811.

In conclusion, where the parties rely on an agreement that is incorporated, in whole or in part, in an interlocutory judgment of dissolution, and have totally failed to comply with the requirement that any exception to the modifiability of law-imposed obligations be contained in a "written agreement" or "oral agreement entered into in open court," as stated in section 4811, extrinsic evidence of intent is inadmissible.[10] The trial court properly rejected such evidence. Robert's support obligations were modifiable.

Affirmed.

Stephens, J., and Ashby, J., concurred.

---

[10]Although proceedings under the Family Law Act that permit the parties to relive the past are to be discouraged, we do not hold that extrinsic evidence to interpret the intention of the parties is never admissible under section 4811. As the court pointed out in *Emanuel* v. *Emanuel, supra,* 50 Cal.App.3d 56, 59, in ruling on a decree which the wife claimed authorized her to collect spousal support after her former husband died, "there must be some language in the agreement which can reasonably be interpreted as declaring an intent to comply with the 'otherwise agreed' requirement of Civil Code section 4801. That is not the case here."