[Civ. No. 64878. Second Dist., Div. Two. Dec. 20, 1984.]

In re the Marriage of EUGENE N. and CHARLOTTE P. SHERMAN.
EUGENE N. SHERMAN, Appellant, v.
CHARLOTTE P. SHERMAN, Respondent.

## COUNSEL

Eugene N. Sherman, in pro. per., for Appellant.

Bobette Fleishman, Arthur E. Schwimmer and Marc J. Poster for Respondent.

## OPINION

**ROTH, P. J.**—The matter herein consists of two appeals taken by Eugene N. Sherman (Husband), the first from an order denying relief under Husband's order to show cause for termination of his obligation to pay spousal support to Charlotte P. Sherman (Wife) on account of her remarriage, and

the second from a subsequent order awarding Wife attorney's fees in the amount of $5,000, which second order was made after the filing of Husband's first appeal.

The following further facts more specifically delineate the framework from which is drawn our conclusion that each of the orders should be affirmed.

Husband and Wife, after a 27-year marriage and on April 14, 1980, entered into a written marital settlement agreement which, inter alia, and in pertinent part provided that: "9.01. Subject to the provisions of Paragraph 9.02, and expressly conditioned thereon, [Husband] shall pay to [Wife] for her support:

"(a) The sum of $500.00 per month commencing January 22, 1980 and continuing thereafter until close of the Residence sale escrow;

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) Upon such close of escrow, a mathematical calculation shall be made of the difference between the sum of $25,000.00 and the monthly payments theretofore made by [Husband] . . . and said difference shall be paid by [Husband] to [Wife] in six (6) equal semi-annual payments, as spousal support, the first payment to be made at close of escrow.

"9.02. Each payment made under the provisions of Paragraph 9.01 shall be paid when due; provided however, that any and all obligation and liability of [Husband] to make such payments, or any of them, forthwith shall cease and terminate on the death of the [Wife].

"9.03. [Wife] waives and relinquishes any and all rights that she may now have or later acquire to receive any spousal support other than as provided in Paragraph 9.01, *and the parties agree that the amount of support, the method of payment and the terms and conditions of termination of support, all as set forth in Paragraphs 9.01 and 9.02, shall not be modifiable by the parties or by any court on any ground.*" (Italics added.)

In addition to the foregoing the agreement provided that: "17.03. This Agreement, except as otherwise expressly provided herein, shall be binding on, and shall inure to the benefit of the respective legatees, devisees, heirs, executors, administrators, assigns and successors in interest of the parties.

"17.04. *The parties may not* alter, amend or *modify this Agreement* except by an instrument in writing executed by both of them. (Italics added.)

"`. . . . . . . . . . . . . . . . . . . . . . . . .`

"17.08. This Agreement and all provisions hereof may be made a part of and incorporated in a judgment of court, *subject however, to the non-modifiability of certain provisions contained herein.* However, lack of approval of this Agreement by any court shall not affect the provisions hereof, and the effectiveness of this Agreement shall not be dependent upon any court approval.

"17.09. *Except as provided in Paragraph 9.03,* and subject to the provisions thereof, the court shall retain continuing jurisdiction to carry out and enforce the terms and provisions of this Agreement." (Italics added.)

An interlocutory judgment of dissolution of the parties' marriage, which approved the agreement and incorporated the spousal support provisions thereof, was entered April 23, 1980, and a final judgment of dissolution followed on August 22 the same year.

In July of 1981, an order to show cause for Husband's contempt and for attorney's fees and costs in connection therewith was issued, upon a declaration by Wife that Husband had failed to make spousal support payments as required. Husband thereafter obtained his own order to show cause, for termination of such support based on Wife's remarriage on December 20, 1980.

By minute order dated January 21, 1982, the trial court denied the relief sought by Husband, concluding Wife's right to support had not been terminated by her remarriage. As noted previously, Husband, on January 27, 1982, appealed from that determination.

As a result, by order of February 4, 1982, the trial court stayed Wife's contempt proceeding against Husband, but declined to stay a hearing on Wife's request for attorney's fees, which request was viewed as being premised not upon statute, but upon Husband's failure to obtain termination of spousal support, under a provision of the Marital Settlement Agreement to the effect that:

"In the event that either party shall be required to bring any action or proceeding to enforce any provision contained in this Agreement, or to enforce any judgment or order made by a court in connection with this Agreement, the party prevailing in such action or proceeding shall be entitled to recover reasonable attorney's fees and costs. . . ."

As also noted previously, when the attorney's fees hearing was resolved in Wife's favor, Husband again appealed.

In simplest terms, it is contended here that Husband's spousal support obligation was terminated by Wife's remarriage as a matter of law, and that the award of attorney's fees constituted an act in excess of the trial court's jurisdiction, owing to the pendency of Husband's first appeal, or was in other respects improperly made.

The first of these claims, according to Husband, is manifestly sustained by reference to Civil Code section 4801, subdivision (b)[1] and by the decisions in *Hilton* v. *McNitt* (1957) 49 Cal.2d 79 [315 P.2d 1], *In re Marriage of Wright* (1976) 54 Cal.App.3d 1115 [126 Cal.Rptr. 894], *Emanuel* v. *Emanuel* (1975) 50 Cal.App.3d 56 [123 Cal.Rptr. 349] and *Beckett* v. *Beckett* (1969) 272 Cal.App.2d 70 [77 Cal.Rptr. 134].

That the contrary is the case, according to Wife, is evident from a consideration of the same statute (see fn. 1), as interpreted by the decisions in *Steele* v. *Langmuir* (1976) 65 Cal.App.3d 459 [135 Cal.Rptr. 426], *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192 [114 Cal.Rptr. 56], *Tremayne* v. *Striepeke* (1968) 262 Cal.App.2d 107 [68 Cal.Rptr. 470] and *Rheuban* v. *Rheuban* (1965) 238 Cal.App.2d 552 [47 Cal.Rptr. 884].

Without recitation of the facts framing the foundation of these authorities, what may be gleaned from their holdings, in our view, are the principles that while a specification in a property settlement agreement that support payments are to be made over a designated term will not, standing alone or when aided merely by "boiler plate" provisions not fairly referable to the issue, satisfy the exception to the statutes' operation (see *Hilton* v. *McNitt, supra,* 49 Cal.2d 79; *Emanuel* v. *Emanuel, supra,* 50 Cal.App.3d 56), the requirement of a written agreement for that purpose does not contemplate literal or formalistic compliance (see *In re Marriage of Nicolaides, supra,* 39 Cal.App.3d 192; *Rheuban* v. *Rheuban, supra,* 238 Cal.App.2d 552), but instead may be fulfilled through provisions which either by their clear import upon an examination of the four corners of the instrument, or as aided directly or inferentially by extrinsic evidence, adequately establish the intention of the parties that termination of such payments not occur by virtue of the statutory events. (See *In re Marriage of Nicolaides, supra,* 39 Cal.App.3d 192; *Steele* v. *Langmuir, supra,* 65 Cal.App.3d 459.)

Applying these principles here, we are satisfied from a review of the four corners of the agreement, and more particularly from the provisions quoted above, that the parties intended Wife's support payments to continue

---

[1]"(b) Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party."

in spite of the fact of her remarriage. Were there any doubt respecting the propriety of that conclusion, moreover, it would be dispelled, we think, by the further consideration of extrinsic evidence in the form of deposition testimony provided by Wife's counsel at the instance of Husband and admitted at the support termination hearing, to the following effect.

"Q [By Husband] As best you recall was anything said in that conversation about spousal support after remarriage?

"A [Wife's Counsel] You asked me—that was the second conversation. I—the discussion was that—I indicated to you that that would have to be a lump-sum amount, that Charlotte would receive that total amount, and that it was nonmodifiable. And you indicated that, although you weren't real clear about it, that you were talking to me about a nonmodifiable amount.

"And I—and I don't remember in that particular conversation if the subject of remarriage was discussed specifically.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q By Mr. Sherman: As best you can recall, what did you say or what did I say in this second conversation concerning spousal support and its termination upon respondent's remarriage?

"A I remember that you said to me, 'Is Charlotte going to marry Wil?'

"And I said that she had not told me she was. And I am pretty sure that I said to you that I hadn't asked her whether or not she was.

"And you said to me, 'Bobette, you know the only reason she is willing to take a lump sum of spousal support is because she is planning to get remarried.'

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Mr. Sherman: Well, I will restate it.

"Q What was said by you and what was said by me in the second conversation, if anything, concerning termination of spousal support for respondent upon her remarriage?

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The Witness: There was something that I have said to you about that,

but I can't place specifically which conversation it was at. I remember specifically saying to you that her choosing to accept a lump-sum spousal support settlement would be good for her if she did remarry. But I don't remember if I said it in that conversation or another one.

"Q BY MR. SHERMAN: All right. I don't think that is responsive to my question.

"My question again specifically is: In either the first or the second conversation did you or I say anything about spousal support for Charlotte surviving or not surviving her remarriage?

"A Yes. You just asked me about that second conversation. But in response to this way it's phrased as to the first conversation, yes.

"Q All right.

"A What I indicated to you a few minutes ago, what I just remembered, I was reminded of when I looked at the marital settlement agreement in Paragraph 9.03 that is in that specific conversation where we were discussing our request for $35,000, which had originally started out higher, and you are indicating that $25,000 would be acceptable if certain reimbursements were made to you.

"We discussed the fact—I said that I wanted that to be a nonmodifiable sum. And the discussion was had between us in that conversation that you said you wanted it to be deductible by you.

"And I indicated to you that I was taking into consideration the amount of taxes that Charlotte would have to pay when we were discussing the amount but that I was worried that if you tried to deduct it—that I felt that a lump-sum spousal support payment was not deductible.

"And you indicated to me that you could make it deductible.

"And I said I want the agreement to reflect that it's not modifiable, the amount of support is not modifiable on any grounds whatsoever so that it's clear, and if you—I didn't—I said to you in this conversation and in the third conversation that 'I have referred to when Dan was present that I didn't want the fact that you were planning to deduct it to appear to be inconsistent with the fact that it was a lump-sum settlement.'

"And I said to you that there had to be specific language that it was nonmodifiable on any ground. And, therefore, I believe that I was specifically referring to remarriage when I talked about any ground."

Accordingly, the first order appealed from herein must be affirmed.

▉▉▉ The same is true concerning Husband's appeal from the order granting Wife attorney's fees, since those fees under the circumstances here present constitute "an element of the costs of suit" (Civ. Code, § 1717, subd. (a)),[2] such that the order granting them is one concerning a "matter embraced in the action [which is] not affected by the . . . order" previously appealed from. (Code Civ. Proc., § 916, subd. (a);[3] see *Hennessy* v. *Superior Court* (1924) 194 Cal. 368, 371-372 [228 P. 862].)

▉▉▉ Nor is the fees order otherwise subject to reversal on the ground Husband was not allowed to introduce evidence respecting his ability to pay the sum found due, since the order emanated from the contractual relationship of the parties and not from their relationship under the Family Law Act (see *Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 623-624 [134 Cal.Rptr. 602]), or because the sum awarded was excessive, since substantial evidence was present to support the trial court's determination. (See *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918].)

The orders appealed from are affirmed.

Compton, J., and Gates, J., concurred.

---

[2] "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit."

[3] "(a) Except as provided in Sections 917.1 through 917.9 and in Section 117.7, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."