[Civ. No. 28339. Second Dist., Div. Four. Dec. 3, 1965.]

MURIEL RHEUBAN, Plaintiff and Appellant v. SIDNEY RHEUBAN, Defendant and Respondent.

Lewis, Signer, Burns & Goldstone and A. A. Goldstone for Plaintiff and Appellant.

Trope & Trope and Sorrell Trope for Defendant and Respondent.

KINGSLEY, J.— The parties to the present appeal formerly were husband and wife. After lengthy negotiations, they entered into a property settlement agreement which provided, *inter alia,* for periodic payments to the wife. This agreement was approved in the interlocutory decree of divorce and (insofar as herein involved) its provisions were incorporated therein. The final decree of divorce was entered on October 22, 1962. Two days thereafter, defendant remarried and, on October 28, 1962, plaintiff remarried. Although defendant was aware of the remarriage, he continued to make the payments provided for by the agreement and decree until, on August 21, 1963, he filed a motion to modify the payments under one paragraph of the agreement and decree,

contending that those payments were in the nature of alimony and that the duty to make them had terminated on plaintiff's remarriage. Over the objection of plaintiff that the court was without power to modify the provision involved, the trial court granted the motion, substituting a provision for the support of the minor children only. Plaintiff has appealed from the order making the modification.[1]

Neither the moving papers filed in the trial court, the testimony there offered and received, nor the briefs here, suggest that there was any basis for modifying the decree and thus relieving the husband of his contractual obligation, other than the bare fact of the wife's remarriage. The husband relies solely on the final paragraph of section 139 of the Civil Code, as added to that section in 1951.[2] It is conceded that the agreement herein involved was "integrated," as that term is used in considering property settlement agreements between husbands and wives, and that, so far as they could, without stating expressly that the payments were to survive remarriage, the parties had provided against its subsequent modification. Thus the only question before us on this appeal is the effect of the cited statutory language on an integrated property settlement agreement, which does not, in express terms, provide that payments thereunder shall survive both death and remarriage. We conclude that, on the facts herein presented to us, the statutory language relied on does not give a court jurisdiction to modify provisions for periodic payments of the kind herein involved.

The agreement between the parties opens with the customary recitals, two of which are herein important; they read as follows:

"WHEREAS, it is the intention of both of the parties hereto that their relation with respect to property and financial matters and maintenance and support be settled and finally established in this Agreement in such a manner that any action respecting the rights or obligations of either toward the other that may now exist or hereafter arise, shall be conclusively settled and determined by this Agreement; and

---

[1]For obvious reasons, plaintiff expressly did not appeal from the portion of the order awarding fees to her counsel for resisting the motion.

[2]We are not herein concerned with the effect of the 1959 and later amendments to the first paragraph of section 139. It is conceded that the 1959 amendment granted, insofar as integrated agreements were concerned, only a power to modify child support provisions and that it did not extend the pre-1959 powers over provisions for the support of a wife.

"WHEREAS, the parties are desirous of entering into a settlement of their property rights, and any and all claims for alimony, support and maintenance, and desire to segregate and divide all of the property owned or claimed by them, or each of them, wheresoever situated, so that each may have his respective share free and apart from the control of the other; and" Paragraph III of the agreement inventories the community property of the parties and paragraph IV provides for its division, including the payment by defendant husband to plaintiff of $15,000 in cash and an agreement to pay to her ". . . as a further part of a division of the community assets, the sum of $40,000.00, which is to be payable by the husband to the wife in monthly installments of $350.00 per month, commencing on the 1st day of September, 1961, and continuing monthly thereafter until the entire sum of $40,000.00 has been paid in full."

As to the children of the parties, the agreement provided, in paragraphs VIII and IX, as follows:

"VIII. HUSBAND'S OBLIGATION TO CHILDREN: Husband agrees that he shall be responsible for and will provide for the religious and college education of the minor children during their minority. Said cost to include the expenses of tuition and necessary books, including cost of living away from home.

"IX. CUSTODY AND SUPPORT OF MINOR CHILDREN: The custody of the minor children of the parties hereto shall be given to the wife subject to the right of reasonable visitation by the husband at all times. Wife agrees that in consideration of the monthly payments of maintenance and support for herself and the two minor children, she expressly agrees to provide for the care and maintenance of the minor children, and that the husband shall have no obligations in connection therewith except for his obligation to provide for their education as hereinabove described.

"Husband agrees that in further consideration of the execution of this Agreement, he will keep in full force and effect and maintain all existing health and accident insurance policies for and on behalf of the minor children during their minority."

The paragraph which is the basis of the present dispute, reads as follows:

"II. SUPPORT AND MAINTENANCE OF WIFE AND MINOR CHILDREN: The parties by this Agreement intend to finally settle, in addition to a division of their property, their rights and duties with respect to support and maintenance. The parties hereto have had explained to them by their respective

attorneys of record herein the terms and provisions of law as relate to alimony and support provisions, and they hereby intend to make the provisions herein contained for the support of First Party to be an integrated part of this Agreement as a whole, and the provisions for the support of First Party have been determined as part of the overall consideration of the transfer of the properties, matters and things set over to First Party as herein contained. *It is intended by the parties that these terms and provisions for the support and maintenance of First Party shall forever remain fixed as set forth herein and shall not be subject to change or modification except as may be set forth herein. In this regard, First Party now and forever waives any future right to any change or modification of the provisions for her alimony and support, and the Second Party likewise joins in the waiver of any rights to so change or modify same.* [Italics added.]

"Husband undertakes and agrees hereby to pay directly to the wife for the support and maintenance of herself and the two minor children of the parties hereto, STEVEN RHEUBAN and CARL RHEUBAN the sum of $750.00 per month, payable on the 1st day of each and every month, commencing on the 1st day of September, 1961 and continuing thereafter for a period of 128 months.''

The agreement is expressly made binding on the heirs and personal representatives of both parties and it provides for security from the husband, by way of a deposit in escrow and a trust, for the payments due from him.

The trial court admitted testimony from the attorney who had represented the wife during the negotiations. While some of his testimony was disputed, there was no contradiction of his testimony, corroborated by that of an accountant, that the actual agreement had been that the wife should waive alimony and receive an agreed sum in settlement of her claims to the community property; that the figure of $1,100 per month for 128 months had been agreed upon as the amount she was to receive, including interest on unpaid balances and an adjustment of income taxes payable in the future; and that the division of that figure into a $350 per month payment purportedly for community assets and $750 per month purportedly as support, including her assumption of all support of the children, was an arbitrary division, arrived at by the accountant in order to give to the defendant husband as much income tax deduction as the wife and her attorney were willing to allow him to transfer to her.

Defendant relies on the literal language of paragraph II above quoted and, as above indicated, on the provisions in the final paragraph of section 139 of the Civil Code which, in 1961 when the agreement was executed, read as follows:

"Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party."

In support of his contention, defendant relies chiefly on the holding in *Hilton* v. *McNitt* (1957) 49 Cal.2d 79 [315 P.2d 1].

## I

It is clear that *Hilton* holds, contrary to plaintiff's contention here, that the mere fact that payments are to continue for a fixed period of time does not constitute that provision an agreement "in writing" sufficient to avoid the effect of the final paragraph of section 139. *Hilton* holds that language in an agreement to the effect that payments are to be made between certain dates is not to be construed as an agreement that payments shall be made from the estate of the husband after his death. By a parity of reasoning, the *Hilton* case must be taken to mean that the same kind of language may not be construed as an agreement to continue the payments after the remarriage of the wife. Nor do we think that the mere fact that it is expressly agreed in writing that death shall not affect the duty to continue payments relieves the party from the effect of the statute in the event of remarriage of the wife. Public policy, and a husband's attitudes, may well look with greater favor on the continued support of a widow from her late husband's estate than on the continued support by a husband or his estate of another man's new wife.

## II

However, while *Hilton* thus supports the husband's position in part, we do not regard it as supporting him in full. In *Hilton*, the pertinent language of the agreement read as follows: "Husband shall pay to wife for her support and maintenance $300 a month, payable on the first of each and every month commencing with the 1st day of August, 1953, and continuing until the first day of July 1956." As we have said above, the Supreme Court held (three justices dissenting) that the mere fact that the payments were to continue

for a fixed period did not prevent that period from being reduced by the application of section 139.

But the agreement and decree before us go much farther than the language used by the Hiltons. Not only was there express provision that the payments were to survive death, but, in the language which we have emphasized in the quotation from paragraph II above, each party expressly waived ''any future right to any change or modification of the provisions for . . . alimony and support.'' Yet, in the case now at bench, the husband, in violation of this express covenant, sought a ''modification'' of those provisions.

The agreement now before us says, as clearly as words could say, that it was the definite intention of the parties that the payments provided for by paragraph II should continue for the full 128 months agreed upon, no matter what happened. Unless we are to hold that the application of section 139 can be obviated only by an agreement which not only is in writing but which uses a magical formula that includes the exact words ''remarriage'' and ''death,'' the language used by the Rheubans is sufficient to show that (in the words of the opening clause of the statutory paragraph relied on) they had ''otherwise agreed.'' We can see no reason why, if the intent of the parties is clear, any particular words should be required to accomplish their purpose; the agreement here complied with the statutory requirement.

We conclude that this agreement, phrased as it is, removes the support payments from the termination provision of section 139 so that those payments, as provided for in paragraph II of the agreement, and in the decree approving it, survive the remarriage of the plaintiff and are beyond the power of the trial court to change.

The portion of the order appealed from is reversed and the cause is remanded to the trial court with directions to deny defendant's motion for modification.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied December 22, 1965, and respondent's petition for a hearing by the Supreme Court was denied January 26, 1966.