[Civ. No. 49006. Second Dist., Div. Three. Dec. 29, 1976.]

KITTY DENNY STEELE, Plaintiff and Appellant, v.
FRANCES J. LANGMUIR, Defendant and Respondent.

## Counsel

Weissman & Weissman, Joseph J. Weissman, Robert A. Weissman, Magaram, Riskin, Wayne & Minikes and Morton Minikes for Plaintiff and Appellant.

Newell & Chester, J. Dan Olincy and Robert M. Newell for Defendant and Respondent.

---

**OPINION**

**COBEY, J.**—Plaintiff, Kitty Denny Steele (formerly Kitty Denny Dean Langmuir) (hereafter for convenience Wife), appeals from a judgment in favor of defendant, Frances J. Langmuir, personal representative of Kenneth M. Langmuir, deceased (hereafter for convenience Husband).

This is an action on a rejected contingent claim in probate in the amount of $157,800, payable $800 per month. The claim rests upon the provisions of a written property settlement and support agreement between Husband and Wife, which was approved by the interlocutory judgment of dissolution of their marriage. The judgment also directed the parties to carry out the executory provisions of the agreement.[1]

The basic issue on appeal is whether the agreement qualifies under Civil Code section 4801, subdivision (b), as one providing, by reasonable implication, that Husband's support of Wife shall *not* terminate upon his death.[2]

The agreement at issue provides in pertinent part:

"V

ALIMONY

"Husband agrees to pay to Wife as and for alimony, the sum of Five Thousand Dollars ($5,000.00) forthwith, and the sum of Eight Hundred Dollars ($800.00) per month payable on the first day of each and every month commencing on the first day of January, 1971 and to continue

---

[1]The parties married in 1967 and separated on August 27, 1970. Husband died on May 2, 1975.

[2]Civil Code section 4801, subdivision (b), reads: "*Except as otherwise agreed by the parties in writing,* the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party." (Italics added.)

until the death, remarriage, or expiration of twenty (20) years from and after the said first day of January, 1971, whichever event shall first occur. In the event Wife enters into a meretricious relationship with a man, then the commencement of such relationship shall be deemed to be the equivalent of remarriage. The provisions of this paragraph providing for payments by Husband to Wife, shall not be subject to modification or revocation by Court Order, or otherwise, and are to be deemed non-modifiable, regardless of any change of circumstances, except for the contingencies contained herein. [3]

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"XI

BINDING EFFECT

"This agreement, and each provision hereof, is expressly made binding upon the heirs, assigns, executors, administrators, representatives and successors in interest of each party."

DISCUSSION

1.    *The Admissibility of the Letter of Husband's Counsel*

Apparently during the negotiations between counsel for the parties leading up to the agreement at issue, Husband's then counsel wrote Wife's counsel a letter containing the following two opening paragraphs. "Mr. Langmuir has instructed me to inform you that he is willing to enter into a Property Settlement Agreement with Mrs. Langmuir providing for a lump-sum payment to her in the sum of $5,000.00, plus monthly payments of $800.00 each, to continue until either her death or remarriage, but in no event beyond twenty years. If she enters into a meretricious relationship with a man, then the commencement of such relationship shall be deemed to be the equivalent of remarriage. [¶] The foregoing support provision is to be non-modifiable, regardless of any

---

[3]The support order portion of this provision was included in the interlocutory judgment of dissolution.

change of circumstances, except for the contingencies mentioned above."[4]

Wife's counsel offered this letter in evidence as extrinsic evidence to resolve the ambiguity in the agreement arising from its failure to identify whose death or remarriage would terminate Husband's continuing obligation of support of Wife imposed by the agreement. The trial court ultimately rejected this evidence.

■ In so ruling, it prejudicially erred. The words in the alimony provision of the agreement "the death" refer necessarily to the death of one or the other of the parties thereto. These words create a patent ambiguity as to whose death was meant. The letter in question should have been received as relevant extrinsic evidence tending to resolve this ambiguity by identifying the death meant as that of Wife. (See *McCollum* v. *Steitz*, 261 Cal.App.2d 76, 78 [67 Cal.Rptr. 703]; *Estate of Dean*, 68 Cal.App.2d 86, 92, 97 [155 P.2d 901].)

In any event, the context in which the word "death" appears in the alimony provision of the agreement suggests this meaning. The remarriage referred to in the same phrase probably is that of Wife as it is unlikely that remarriage of Husband was intended to terminate Wife's support. Therefore, the court might well have found from the extrinsic evidence that the "death" referred to was Wife's death.

2. *The Agreed Support Obligation Could Survive Husband's Death If Such Was Intended*

Prior to 1951 by decisional law an award of permanent alimony terminated upon the death of either spouse. A 1951 amendment to former Civil Code section 139 codified this rule subject to the following exception: "[e]xcept as otherwise agreed by the parties in writing." This

---

[4]The remainder of the letter reads:

"Please prepare a Settlement Agreement incorporating the foregoing provisions, have Mrs. Langmuir sign it, and mail it to me for the signature of Mr. Langmuir. Do not require my signature on the Agreement.

"I have advised Mr. Langmuir not to make such an agreement with his wife for the reason that I have no doubt that it greatly exceeds any obligation that might be imposed upon him by a Court if the case were contested. Although I will forward the proposed Property Settlement Agreement to Mr. Langmuir when I receive it from you, it will be my recommendation, and my hope, that he not sign it.

"The Agreement should provide that it is to be submitted to the Court for its approval, and I intend to be present with Mr. Langmuir on January 8, 1971, at 8:30 A.M., in Department 2, when the case comes up for hearing."

rule and its exception are now set forth in the already quoted subdivision (b) of Civil Code section 4801. (See 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, §§ 181, 204, pp. 5050, 5074-5075.)

The 1951 amendment was first construed in 1957 in *Hilton v. McNitt*, 49 Cal.2d 79, 80, 82-83 [315 P.2d 1], where a bare majority of our Supreme Court held that a provision in a property settlement agreement specifying that monthly support payments from the husband to the wife should continue for three years did not constitute a written agreement between them that such payments were impliedly thereby to continue in the event of the husband's death during this period.

The only decision since *Hilton* construing a property settlement agreement on the point before us—the effect of the death of the former husband—is the 1975 case of *Emanuel v. Emanuel*, 50 Cal.App.3d 56 [123 Cal.Rptr. 249]. There the former wife sought $69,000 ($400 a month for 14.5 years) from her former husband's estate. The agreement there construed provided that this monthly support payment should continue until the death or remarriage of the former wife. There was no express provision negating modification or cancellation as in the agreement at bench. The agreement, however, also contained the general standard binding on successors-in-interest provision. (*Id.,* at 57-58.) A division of this court held, in effect, that the existence of this boiler plate general provision did not constitute sufficient reason for not following *Hilton*. (*Id.,* at 58-60.)

On the other hand, the remarriage cases under the subdivision have gone the other way. In *Rheuban v. Rheuban*, 238 Cal.App.2d 552, 554-557 [47 Cal.Rptr. 884], decided some eight years after *Hilton*, another division of this court held that a trial court was without power to terminate the former husband's monthly support payments to the former wife upon her remarriage within the 128 month period specified for such payments where the property settlement agreement expressly made the provision for the payments "fixed" and not "subject to further change or modification"[5] and the agreement also contained a provision making it

---

[5]The nonmodifiability provision read: " 'It is intended by the parties that these terms and provisions for the support and maintenance of First Party shall forever remain fixed as set forth herein and shall not be subject to change or modification except as may be set forth herein. In this regard, First Party now and forever waives any future right to any change or modification of the provisions for her alimony and support, and the Second Party likewise joins in the waiver of any rights to so change or modify same.' " (Italics omitted.) (*Rheuban v. Rheuban, supra,* 238 Cal.App.2d at 555.)

generally binding on the heirs and personal representatives of the parties (as in *Emanuel*).

*Rheuban* was followed in 1974 in the case of *In re Marriage of Nicolaides,* 39 Cal.App.3d 192, 196-197 [114 Cal.Rptr. 56], where the former wife remarried during the five-year period for permanent alimony payments. The court relied upon the similarity between the agreements in the provisions limiting modification and in the existence in each of the agreements of the aforementioned standard provision making the agreement binding upon successors-in-interest. It said at page 202: "*Rheuban* is a logical and sound extension of the holding in *Hilton.* It explains that where there is evidence in addition to the promise to pay for a specified period from which it reasonably may be concluded that the parties intended the payments to continue after remarriage of the wife, *Hilton* does not require that the payments terminate simply because the parties *literally* do not provide otherwise." We agree.

■ In view of the fact that the language of the subdivision is the same as respects both remarriage and death, we see no reason why the remarriage cases are not sound precedents for a death case such as ours. The question is the same in both situations—does the agreement express the intent of the parties that Wife's remarriage or Husband's death shall not terminate Wife's support?

In determining this question in respect of the agreement before us, pursuant to Civil Code section 1636, we note first that the agreement carefully lists four specific events, any one of which operates to terminate Husband's continuing support obligation. Assuming that "death" and "remarriage" are, on the basis of the aforementioned extrinsic evidence, construed to mean Wife's death or remarriage, these are: (1) Wife's death; (2) Wife's remarriage; (3) its specified equivalent—the commencement of a meretricious relationship;[6] (4) the expiration of the 20-year period. The death of the Husband is not included among these events.

We note secondly that, much like *Rheuban,* the agreement here expressly provides that Husband's support obligation is to be both nonmodifiable and nonrevocable and, more specifically, it is to be nonmodifiable "regardless of any change of circumstances, *except for the*

---

[6]We are not impressed with the argument that the inclusion of this event gives rise to the inference that the agreed support obligation was not to survive Husband's death. The other events triggering termination of this obligation carry no such inference.

*contingencies contained herein."* (Italics added.) As just stated these contingencies do not include Husband's death.

Accordingly, reasonably construed (see Civ. Code, § 3542), the parties "otherwise agreed" within the meaning of Civil Code section 4801, subdivision (b). In other words, under *Rheuban,* the parties did not have to provide specifically that Husband's support obligation survived his death (cf. *In re Marriage of Forgy,* 63 Cal.App.3d 767, 771 [134 Cal.Rptr. 75]), although such explicit draftsmanship would have undoubtedly obviated this litigation.

Consequently, if, based upon the aforementioned extrinsic evidence, the "death" referred to is found to be that of Wife, the agreement adequately excludes the Husband's death as a contingency terminating the support payments.

The judgment is reversed for further proceedings consistent with the views expressed in this opinion.

Allport, Acting P. J., and Potter, J., concurred.

A petition for a rehearing was denied January 25, 1977, and respondent's petition for a hearing by the Supreme Court was denied February 23, 1977.