[No. A052218. First Dist., Div. Three. Feb. 20, 1992.]

VERA S. LUCAS, Plaintiff and Appellant, v.
JUNE ELLIOTT, Individually and as Executrix, etc., Defendant and
Respondent.

**COUNSEL**

Lincoln A. Mitchell for Plaintiff and Appellant.

Robertson, Alexander, Luther, Esselstein, Shiells & Wright and Timothy C. Wright for Defendant and Respondent.

## OPINION

### MERRILL, J.—

#### PROCEDURAL AND FACTUAL BACKGROUND

Appellant Vera Lucas and the decedent Dr. Leroy Lucas[1] entered into an agreement entitled "Integrated Marital Separation Custody, Support and Property Settlement Agreement" on February 29, 1968, pursuant to the dissolution of their 20-year marriage. The pertinent portion of the agreement at issue here sets forth: "9. *Support of Wife*: Expressly relying on all of the provisions of this agreement, including in part, the division of property herein agreed to, the parties hereby agree and fix the support of wife, until her death or remarriage, as follows:

"(a) Husband shall pay to wife the sum of Four Hundred Fifty Dollars ($450.00) per month as and for her support, commencing on the first day of the month following execution of this agreement. As the husband's duties of support for each child terminate hereunder, said sum shall be increased by One Hundred Dollars ($100.00) per month for the four eldest children and Twenty-Five Dollars ($25.00) per month for the youngest child, until the total fixed and nonmodifiable amount is Eight Hundred Seventy-Five Dollars ($875.00) per month.

"(b) Husband shall maintain for the benefit of wife, life insurance benefits commensurate with the present value of his support obligations, as said present value exists at any time in the future. It is agreed that the present value as of the execution of this agreement is Two Hundred Four Thousand Dollars ($204,000.00). Although husband shall have the discretion in whatever insurance plans he adopts, wife reserves the right to submit any dispute regarding the adequacy of benefits and security to a Court of competent jurisdiction for settlement."

The agreement also provided, inter alia, that each covenant of the agreement was binding upon the heirs, legatees, devisees, assignees, administrators, executors, and successors in interest of the parties and that the agreement could not be modified except by a written instrument executed by both parties.

The trial court ruled that evidence of Lucas's understanding of the meaning of paragraph 9(b) was inadmissible.

---

[1] To avoid confusion, we shall refer to appellant Lucas as "Lucas" and the decedent Dr. Lucas as "Dr. Lucas."

Dr. Lucas died on March 10, 1988, and his widow, respondent June Elliott, was appointed executrix of his will. Letters testamentary were issued to Elliott on May 2, 1988, and she is presently serving as the personal representative of decedent's estate. Lucas has not remarried and was 65 years of age at the time of trial.

Lucas filed a claim against her former husband's estate in the probate action. As executrix, Elliott approved that portion of Lucas's claim which requested $7,924.34 for support payments owing at the time of Dr. Lucas's death. However, Elliott rejected the claim insofar as it sought $194,250, as an amount equal to the then present value of payments of $875 per month from April 1, 1988, until Lucas's death or remarriage, in accordance with paragraphs 9(a) and (b) of the agreement.

Thereafter, Lucas filed a complaint for damages against Elliott as executrix and individually, alleging that, in breach of the property settlement agreement, Dr. Lucas failed to maintain life insurance on his life for Lucas's benefit. At trial, by offer of proof, Lucas introduced the uncontroverted testimony of an actuary that the present value as of April 1, 1988, of $875 monthly support payments for her lifetime was $103,248.

Elliott's contention at trial and on appeal is that, pursuant to Civil Code,[2] former section 139 and pertinent case law, Dr. Lucas's support obligation did not survive his death. The trial court agreed and ruled: "The Court finds no entitlement for alimony after the date of the paying spouse's death and no obligation to maintain life insurance for that alleged obligation."

## DISCUSSION

At the time the parties executed their property settlement agreement, former section 139[3] provided in part as follows: "*Except as otherwise agreed by the parties in writing*, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." (Stats. 1967, ch. 1308, § 1, p. 3130, italics added.) On appeal, Lucas argues the trial court erred in finding that based on section 139 any entitlement to

---

[2]All further statutory references are to the Civil Code unless otherwise indicated.

[3]That portion of former section 139 with which we are concerned now·appears, in substantially the same form, in section 4801, subdivision (b). This statute provides: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party."

spousal support, or any insurance provision to satisfy such obligation, terminated upon the death of Dr. Lucas. We find merit in Lucas's contention and reverse the judgment.

■ Preliminarily we note that the interpretation of a contract or other written instrument is a question of law if there is no extrinsic evidence thereon or if the evidence is without conflict and is not susceptible of conflicting inferences. (*Aviointeriors SpA* v. *World Airways, Inc.* (1986) 181 Cal.App.3d 908, 915 [226 Cal.Rptr. 527].) In the instant case, as no extrinsic evidence as to the meaning of the parties' property settlement agreement was admitted,[4] we are not bound by the trial court's construction of the agreement.

The pertinent language of former section 139 was first construed in *Hilton* v. *McNitt* (1957) 49 Cal.2d 79 [315 P.2d 1], in which our Supreme Court interpreted a property settlement agreement specifying monthly support payments from the husband to the wife for a period of three years. During the three-year period the husband died and the wife remarried. The *Hilton* court found the provision did not constitute a written agreement between them that such payments were impliedly thereby to continue in the event of the husband's death during this period. "[S]ince neither the agreement nor the decree here provided that the monthly support payments were to continue beyond the death of the obligor or the remarriage of the obligee [wife] may not prevail . . . . [H]ad the parties intended that Mrs. Hilton was to receive a certain sum of money without regard to her remarriage or the obligor's death it would have been a simple matter to make their intentions known in the property settlement agreement." (*Hilton* v. *McNitt, supra,* 49 Cal.2d at p. 82.)

One subsequent opinion considering former section 139 in the context of remarriage, *Rheuban* v. *Rheuban* (1965) 238 Cal.App.2d 552 [47 Cal.Rptr. 884], found that support payments do not terminate even though the wife remarried during the specified time period for support, where the property settlement agreement expressly provided that the payments were "fixed" and "not be subject to change or modification" and the agreement was generally binding on the heirs and personal representatives of the parties. (*Rheuban* v. *Rheuban, supra,* 238 Cal.App.2d at pp. 554-557.)

Similarly in *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192 at pages 202-203 [114 Cal.Rptr. 56], the appellate court found the requirements

---

[4]Appellant raises the issue of the propriety of the trial court's ruling excluding evidence of Lucas's understanding of paragraph 9(b). We need not reach this issue on appeal as we find the agreement unambiguously reveals the parties' intent to provide for Lucas's support following Dr. Lucas's death.

for such an agreement within the context of section 139 were satisfied where, despite the wife's remarriage during the time specified for support payments, the agreement expressly limited modification thereof and included a provision making it binding upon successors-in-interest. The *Nicolaides* court analyzed: "*Rheuban* is a logical and sound extension of the holding in *Hilton*. It explains that where there is evidence in addition to the promise to pay for a specified period from which it reasonably may be concluded that the parties intended the payments to continue after remarriage of the wife, *Hilton* does not require that the payments terminate simply because the parties *literally* do not provide otherwise." (*In re Marriage of Nicolaides*, *supra*, 39 Cal.App.3d at p. 202.)

In *Steele* v. *Langmuir* (1976) 65 Cal.App.3d 459 [135 Cal.Rptr. 426], the Court of Appeal interpreted the property settlement agreement as requiring husband's spousal support of wife to continue following husband's death where the spousal support provision set forth payments until the wife's death, remarriage or expiration of 20 years, whichever event occurred first. Additionally, the provision expressly stated that it was not subject to modification or revocation by court order or otherwise and that it was nonmodifiable " 'regardless of any change of circumstances, except for the contingencies contained herein.' " (*Id*. at pp. 461-462, fn. omitted.) The Court of Appeal reasoned that the language of section 4801, subdivision (b), is the same with respect to both remarriage and death and therefore applied the reasoning of *Nicolaides* and *Rheuban* to the facts there. The *Steele* court held that the parties had "otherwise agreed" that spousal support to the wife would continue following the husband's death, as required by section 4801, subdivision (b). First, the court considered that the agreement did not include the husband's death among the events which would terminate his spousal support obligation. Further, like the *Rheuban* case, the husband's support obligation in *Steele* was expressly nonmodifiable and nonrevocable except for the specific events set forth in the agreement. (65 Cal.App.3d at pp. 465-466.) *Steele* concluded the parties did not need to provide expressly that the husband's support obligation survived his death. Reasonably construing the agreement, the parties had so provided. (*Id*., at p. 466.)

■ Applying these principles to the instant case, we have determined that the parties' agreement expressly provided that Dr. Lucas's support obligation to Lucas would continue following his death. There can be no other reasonable construction of paragraph 9(b)'s provision requiring Dr. Lucas to maintain life insurance for Lucas's benefit. (See § 3542.) The parties' intentions were that Dr. Lucas maintain a life insurance policy in an

amount commensurate with the present value of his spousal support obligation to Lucas. Additionally, paragraph 9 sets forth that spousal support to Lucas shall continue "until *her* death or remarriage. . . ." Dr. Lucas's death was not among the events terminating his spousal support obligation. Moreover, paragraph 9(b) would be rendered meaningless if we were to interpret the property settlement agreement as terminating the spousal support obligation to Lucas following Dr. Lucas's death. The parties' agreement that Dr. Lucas maintain life insurance for Lucas's benefit would only benefit Lucas upon Dr. Lucas's death. Paragraph 9(b) satisfies the requirement of former section 139 (and current § 4801, subd. (b)) that the parties "otherwise agreed in writing" to the continuation of the spousal support obligation following Dr. Lucas's death.

The instant case is readily distinguishable from *In re Marriage of Glasser* (1986) 181 Cal.App.3d 149 [226 Cal.Rptr. 229], relied upon by respondent Elliott. In *Glasser*, the Court of Appeal held that language in a spousal support agreement stating that the agreement was nonmodifiable and that the agreement was an irrevocable settlement of their property rights did not satisfy section 4801, subdivision (b)'s requirement that the parties otherwise agreed to the wife's spousal support following her remarriage. *Glasser* distinguished the opinions in *Rheuban* and *Nicolaides* on the basis that those cases relied in part upon the fact that the agreements there were integrated. The *Glasser* court noted that section 4811, subdivision (b),[5] has since eliminated the significance of a so-called "integrated" agreement. (*In re Marriage of Glasser, supra*, 181 Cal.App.3d at p. 152.)

In the first instance, our conclusion that the parties here have "otherwise agreed in writing" to Dr. Lucas's continued spousal support following his death is grounded upon the plain meaning of the words of paragraph 9. Although it appears that the parties intended an integrated agreement by the prefatory language to paragraph 9,[6] we do not rely upon this characterization in arriving at our conclusion. Furthermore, the agreement in question was executed in 1968, prior to the enactment of section 4811. The import of an integrated agreement, as this agreement purports to be, would continue despite section 4811, subdivision (b). (§ 4811, subd. (c).)

---

[5]Section 4811, subdivision (b) provides in part: "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property."

[6]We refer here to the following phrase: "Expressly relying on all of the provisions of this agreement, including in part, the division of property herein agreed to, the parties hereby agree and fix the support of wife . . . ."

The judgment is reversed and the matter is remanded to the trial court for further proceedings to fashion a remedy consistent with this opinion. Respondent shall bear appellant's costs on appeal.

White, P. J., and Chin, J., concurred.