Filed 6/17/14  Marriage of Irons and Napodano CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of LEE RENEE IRONS AND JOHN JOSEPH NAPODANO. | |
| LEE RENEE IRONS, | E055950 |
| Respondent, | (Super.Ct.No. SWD023394) |
| v. | OPINION |
| JOHN JOSEPH NAPODANO, | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County.  Robert W. Nagby, Temporary Judge.  (Pursuant to Cal. Const., art VI, § 21.)  Affirmed.

Law Offices of Catherine A. Vincent, Catherine A. Vincent and Matthew M. Vincent, for Appellant.

Serenity Legal Services and Arnold H. Wuhrman for Respondent.

1

John Joseph Napodano (John) appeals from a judgment following the dissolution of his marriage to respondent Lee Renee Irons (Lee). John challenges the portions of the judgment ordering spousal support and awarding attorney fees to Lee. He contends the trial court erred in a variety of respects, including: 1) improperly considering the income of John's current significant other in determining spousal support; 2) making a finding regarding Lee's gross income that is unsupported by substantial evidence; 3) making findings pursuant to Family Code[1] section 4320, subdivisions (a)(1), (a)(2), and (h) that are unsupported by substantial evidence[2]; 4) ordering spousal support in an amount that constituted an abuse of discretion in light of the court's own findings under section 4320, subdivisions (b), (c), (d), (e), (g), and (i); and 5) awarding Lee attorney fees pursuant to sections 2030 and 2031, even though John would not have sufficient income to satisfy the order after paying his other obligations, including child support and spousal support.

We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on September 25, 1992, and at the time of trial had one minor child, born June 9, 1994. They separated on October 8, 2008. Lee filed her petition for dissolution of marriage on November 15, 2010.

---

[1] Further undesignated statutory references are to the Family Code.

[2] As discussed more fully below, in his reply brief, John abandons his assertion that the trial court's findings pursuant to section 4320, subdivision (a)(2), are unsupported by substantial evidence, but maintains that the trial court nevertheless abused its discretion, in light of those findings.

2

After trial, the petition for dissolution of marriage was granted, with marital status terminating effective November 18, 2011. In addition to ruling on other matters not relevant to the present appeal, the court awarded Lee $1,641 per month in child support, which was to cease when the child either turned 19, or had turned 18 and was no longer a full-time high school student—the second of these alternative triggers for cessation of child support at the time of the court's ruling was expected to occur by June 2012. The court also awarded Lee $3,200 per month in spousal support, and $3,500 in attorney fees. The court's order with respect to attorney fees permits John to make payment of the $3,500 in installments of $100 per month beginning January 1, 2012, with $50 due on the first and fifteenth of each month, until the amount is paid in full.

We discuss the facts underlying the court's orders regarding spousal support and attorney fees below, as necessary to address John's specific claims of error.

## II. DISCUSSION

### A. Standard of Review

We review the court's orders on spousal support and attorney fees for abuse of discretion. (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93 [amount and duration of spousal support rests within trial court's broad discretion]; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866 [motion for attorney fees and costs in dissolution action is addressed to trial court's discretion].) "'An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." [Citation.]' [Citation.]" (*In re Marriage of Bower* (2002) 96

3

Cal.App.4th 893, 898-899 (*Bower*).) The appealing party bears the burden to affirmatively show error. (*Id.* at p. 898.)

Additionally, "'[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]' [Citation.]" (*In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 829 [Fourth Dist., Div. Two].) "As an aspect of the presumption that judicial duty is properly performed, we presume . . . that the court knows and applies the correct statutory and case law [citation] and is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process. [Citations.]" (*People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

### B. Analysis

#### 1. John's Income

John objects to the trial court's findings with respect to his income in several, partially-overlapping respects. First, he contends that the trial court improperly took account of his nonmarital partner's income in determining his income. Second, he contends the trial court erred with respect to its findings pursuant to section 4320, subdivision (c), regarding his ability to pay spousal support. Although John's income is one of several factors to be considered with respect to his ability to pay, his arguments with respect to his nonmarital partner's income are sufficiently distinct that we address that issue first, and separately, from others raised regarding his ability to pay.

4

### (a) John's nonmarital partner's income

John contends that the trial court's statements on the record while making its findings and orders after trial demonstrate that it improperly took his nonmarital partner's income into account in determining the award of spousal support to Lee. He further argues that the court's award of spousal support itself demonstrates that the court must have taken the nonmarital partner's income into account. Our review of the record reveals no such error.

Subdivision (b) of section 4323 provides as follows: "The income of a supporting spouse's subsequent spouse or nonmarital partner shall not be considered when determining or modifying spousal support." In *In re Marriage of Romero* (2002) 99 Cal.App.4th 1436 (*Romero*) [Fourth Dist., Div. Two], this court interpreted section 4323, subdivision (b) to require the trial court, in determining a supporting spouse's ability to pay spousal support, to eliminate from consideration not only "new mate income," but also "all additional expenses resulting from the remarriage [or nonmarital partnership]." (*Romero*, *supra*, at p. 1445.) "In other words, the court must consider only husband's part of the shared expenses." (*Ibid.*)

To prevail here, therefore, John would have to overcome the presumptions of correctness noted above by demonstrating that the trial court's reasoning in determining the award of spousal support cannot be reconciled with the mandate of section 4323, subdivision (b), as that statute is interpreted in *Romero*. He has not done so.

In John's income and expense declaration, he reported $5,268.45 in average monthly household expenses. That household includes not only himself, but also his

5

current nonmarital partner, her adult daughter, and her infant grandson. At trial, John testified that his nonmarital partner "gives [him] a thousand dollars a month" as a contribution towards household expenses, an amount that is reflected in his income and expense declaration. The income and expense declaration also discloses that John's nonmarital partner has a gross monthly income of $5,000.

In announcing its findings after trial, the court noted that "Respondent co-habits with a significant other who has a monthly income of approximately $5,000." The court described the import of this fact with respect to the spousal support award as follows: "Although the income of the respondent's significant other is not considered in these calculations for the purpose of ordering permanent spousal support, this income is considered only for the purpose that the amounts would be available to contribute to the respondent's, rather, household expenses and for no other purpose. [¶] The testimony of the respondent during the trial, and included in his income and expense declaration, was that the respondent's significant other does contribute $1,000 per month as to the average monthly household expenses." Later, when discussing John's ability to pay under section 4320, subdivision (c), the court stated: "First, with regard to the incomes, [the] Court did state the income. The Court did consider the incomes of both parties and then also considered—just again for the purposes of the expenses, the moneys contributed by the significant other."

The quoted statements by the trial court are not a model of clarity. Nevertheless, viewed in the favorable light required here, the statements do not manifest a violation of section 4323, subdivision (b). The trial court did not say that in determining spousal

6

support, it had generally considered, either directly or indirectly, the $5,000 monthly income of John's nonmarital partner, as expressly forbidden by section 4323, subdivision (b). Indeed, the court specifically disavows any such consideration of her income. Rather, the court indicates that it considered the $1,000 she pays to John monthly in determining John's part of the shared expenses of their household—a determination that it was required to make under *Romero*. (*Romero*, *supra*, 99 Cal.App.4th at p. 1445.) In other words, the court assumed that all of the household expenses declared by John were attributable to his part of the shared expenses except for $1,000 per month, based on the apparent agreement between John and his nonmarital partner that such an amount is a reasonable estimate of *her* part of those shared expenses. Such reasoning does not violate the mandate of section 4323, subdivision (b), as that statute is interpreted in *Romero*.

In addition to his arguments based on the statements by the court, John contends the spousal support award itself demonstrates that the court must have taken the $5,000 monthly income of his nonmarital partner into consideration, in violation of section 4343, subdivision (b). The gravamen of this argument is that after payment of child support and spousal support, John's net income is less than Lee's, so the court must have "substantially considered and utilized" John's nonmarital partner's income in determining the spousal support award. John further asserts that "without his significant other's contribution to his monthly expenses he would be unable to pay the support orders . . . ."

John's reasoning is flawed in several respects. First, John assumes that the court was *trying* to award spousal support in an amount that would leave him a net income roughly equal to Lee's, after taking into account his payment of child support and spousal support; working from that assumption, he reasons that the court could only have made the spousal support order it made if it factored in the nonmarital partner's income. But there is no basis for that foundational assumption: "equality of postseparation income is not an element of section 4320 in setting spousal support." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 209.)

Second, the entirety of the difference in net income after payment of support is attributable to a factor other than consideration of John's nonmarital partner's income, namely, child support. The court found that Lee bears the vast majority of the burden of caring for the parties' minor daughter, setting John's timeshare with the child at only two percent. The court's award of child support to Lee appropriately reflects this allocation of the burden of caring for the child.[3] Once the award of child support expired—as

---

[3] The argument, raised in John's reply brief, that the court should have reduced spousal support by the amount of child support for the duration of the child support award, is unsupported by authority, and for good reason: there is no authority requiring a court to offset an award of spousal support by any amount of child support awarded. The obligations of each party are factors to be considered by the trial court in making an award of spousal support. (§ 4320, subd. (e).) But nothing requires the court to give John's other obligations, including the obligation to pay child support, the dispositive weight that he would prefer.

noted, an event which was expected to occur in June 2012—John's net income after payment of spousal support would actually slightly exceed Lee's.[4]

Third, the record demonstrates that John in fact has sufficient income to pay the awarded child support and spousal support, his protestations to the contrary notwithstanding. His after-tax monthly income is $8,266, more than enough to pay the ordered $3,200 in spousal support and $1,641 in child support with a substantial remainder available for his own expenses. The remainder may be somewhat less than John's portion of his current shared household expenses. But a supporting party's standard of living is only one of many factors to be considered under section 4320. There is no legal requirement that an award of spousal support and child support must leave a supporting party sufficient net income, after payment of support, to continue that party's current level of other expenses without any additional economization. To the contrary, courts have acknowledged that "child support almost inevitably reduces the payor's standard of living . . . ." (*In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1361.) Here, after the cessation of child support, but while John still paid spousal support in the amount ordered, his net income would substantially *exceed* his portion of his current shared monthly household expenses, and indeed would roughly equal the total household expenses he declared, even setting aside the $1,000 per month that he testified he receives from his nonmarital partner towards those expenses.

---

[4] This is true under both parties' calculations of net income, which differ slightly.

In short, John has failed to demonstrate any violation of the prohibition codified in section 4323, subdivision (b), regarding consideration of the income of a supporting spouse's subsequent partner in determining spousal support.

(b)  John's ability to pay

John contends that the trial court erred with respect to its findings pursuant to section 4320, subdivision (c), regarding John's ability to pay.  Specifically, he disputes the trial court's calculation of his base monthly salary and other taxable income.[5]  We find no abuse of discretion.

Section 4320, subdivision (c) requires the court, in ordering spousal support, to consider "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living."

The court found that John had total monthly income of $11,576, including a base salary of $6,475, and other taxable income in the amount of $5,101.  As reported on his income and expense declaration, John's only "other taxable income" is money earned from working overtime.  The amount found by the court is substantially less than the average income for the previous year reported by John ($12,832.72, including $6,371 in

_____

[5]  John also apparently contends that the trial court erred in its consideration of his assets and the marital standard of living.  But he fails to articulate how exactly the court might have erred in this regard:  he recites the court's findings, but raises no specific objection, other than the conclusion that "on balance, $3,200 per month in spousal support payable to Lee was excessive and was an abuse of discretion."  In the absence of any authority or logical reason why the court was required to weigh evidence differently than it did, John fails to demonstrate any error.  (See *Bower*, *supra*, 96 Cal.App.4th at p. 898.)

10

base salary and 6,461.72 in overtime), but a few dollars more than the amount John reported as his previous month's income ($11,491.10, including $5,412 in base salary and 6,079.10 in overtime). The court's decision to use the amount that it did took into account John's testimony that his income had been declining.

On appeal, John argues, in essence, that the court abused its discretion by failing to calculate John's base income and other taxable income solely on the basis of his most recent bi-weekly paystub. Such an analysis would yield a base income of $5,861 per month, and other taxable income of $4,934 per month, for a total of $10,795. John argues that this total is more appropriate to use, given John's testimony that his income, and particularly his income from overtime, was declining. He articulates no reason, however, other than his own ipse dixit, why the court was bound to accept his testimony regarding declining income, or account for it in precisely this manner. Moreover, as noted above, a court may abuse its discretion by using a small, non-representative sample as a baseline for estimating average income. (See *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1083 (*Riddle*).) Here, John's proposed baseline is not even representative of a full month. The court was acting well within its discretion to reject John's proposed method of calculation, and to conclude as it did.

In his reply brief, John expands on and cites several cases in support of an argument he only suggests in passing in his opening brief: that the trial court's findings regarding his income effectively subject him "to a life of servitude that extends beyond the 'norms' in order to meet his obligations to his ex-spouse and then to himself," because it includes his overtime "as a substantial basis for support." The case law he

cites, however, confirms that income from overtime work should *not* be disregarded in determining spousal support, and "how it is to be considered in a particular case is within the discretion of the trial court." (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 493, fn.15.) John presents no compelling reason why the manner in which the trial court considered his overtime income here—by acknowledging and taking into account John's argument that his total income, and overtime income in particular, was declining, albeit not giving those facts quite as much weight as John would have preferred—represents an abuse of the trial court's discretion.

*In re Marriage of Simpson* (1992) 4 Cal.4th 225, cited by John, does not compel a different result. In that case, the trial court relied on a husband's *earning capacity* to determine spousal support, rather than actual income, because the court found the supporting spouse had reduced his income—moving from higher compensated work to lower compensated work, and reducing his hours—in an attempt to shirk his family obligations. (*Id.* at pp. 233-234.) The Supreme Court found that the trial court erred by basing its calculations of earning capacity on a work regimen that involved "substantial, continuous overtime" (italics omitted) rather than the amount the husband could earn based on a "reasonable work regimen"—which may or may not include some overtime— in the higher compensated line of work. (*Id.* at pp. 235-236.) Here, in contrast, the trial court made no findings about John's earning capacity separate from its findings of his actual income, and explicitly took into account the recent reduction in his income.

Neither does *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, also cited by John, require a different result. That case involved a father seeking to modify a child

support order.  The mother had retired early, and the father sought to impute to her income she would have made, had she not retired, in determining support.  (*Id.* at p. 1295.)  The appellate court upheld the trial court's decision not to impute such hypothetical income to her.  (*Ibid.*)  *Bardzik* thus is another case involving calculation of earning capacity, not actual income, and is inapposite here.

In short, we find no abuse of discretion with respect to the trial court's calculation of John's ability to pay.

### 2.  *Lee's Income and Marketable Skills*

John contends that the trial court erred regarding various findings relating to Lee's income and ability to work.  Among other things, he argues that there is no substantial evidence to support its findings regarding her income from her current employment or her marketable skills.  We disagree, for the reasons stated below.

#### (a)  Lee's current income

John contends that no substantial evidence supports the trial court's finding that Lee's average monthly income is $1,776 per month.  We are not persuaded that the finding was an abuse of discretion.

The trial court found that Lee had a base salary from her primary employment of $1,535 per month.  This figure is supported by the year-to-date information from her paycheck stub, indicating that she had made $15,340.88 for the first 10 months of 2011.  The court further found that Lee earned an additional $241 per month on average from other taxable income.  This amount reflects income Lee earned working as a substitute teacher:  $241 is the monthly average she reported in her income and expense

13

declaration. No evidence introduced at trial establishes that her declared monthly average income from substitute teaching is inaccurate. The total of $1,535 and $241 is the average monthly income of $1,776 utilized by the court.

John would have preferred that the court calculate Lee's monthly income differently, arguing that her income was actually higher than was found by the trial court, so the spousal support award should have been lower. In particular, he focuses on Lee's testimony that in the time period immediately before trial, she had earned somewhat more per month than the average of $241 from her position as a substitute teacher. Indeed, the amount of income Lee declared for the previous month from substitute teaching was $490. Her testimony at trial, however, was that this higher level of income was the result of specific efforts over the previous 30 days. There is no evidence in the record establishing that this higher level of work could continue—Lee works as a substitute teacher on a "when needed" basis. A trial court is not bound to use higher, extraordinary months—even if recent—as a baseline in calculating a spouse's average monthly income, rather than the average over a longer period of time. To the contrary: using a smaller sample size of nonrepresentative recent months may itself constitute an abuse of discretion in some circumstances. (See *Riddle*, *supra*, 125 Cal.App.4th at p. 1083 [abuse of discretion to base determination of husband's income on prior two months, where information regarding longer, more realistic time samples was available].)

John's arguments regarding Lee's base salary are no more persuasive: his estimate of her base salary is actually lower than the amount calculated by the trial court from her pay stubs. We find no abuse of discretion.

14

### (b) Lee's marketable skills

John contends that no substantial evidence supports the trial court's findings pursuant to section 4320, subdivision (a)(1) regarding Lee's marketable skills. John objects in particular to the trial court's finding that Lee is employable at "'nominal remuneration,'" and the trial court's failure to give more weight to the circumstance that Lee is only working part time, but theoretically could be working full time. We are not persuaded that the trial court's findings constitute an abuse of discretion.

Subdivision (a) of section 4320 requires that the trial court, in ordering spousal support, consider various factors relating to the "extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage . . . ." Subdivision (a)(1) describes some of these factors: "The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills, and the possible need for retraining or education to acquire other, more marketable skills or employment." (§ 4320, subd. (a)(1).)

In making its findings after trial, the court specifically discussed each of the factors listed in section 4320, subdivision (a)(1). With respect to the issues now raised on appeal by John, the court stated that Lee "continues to be employable in a clerical position and really at nominal remuneration," noting that "she's never been a high wage earner . . . ." In context, the phrasing to which John objects, "nominal remuneration," is no more than a general reference to the relatively modest level of pay that Lee receives from her current work. There is no evidence supporting a contrary conclusion—that she

15

has been, is, or reasonably could become a high wage earner—in the record, and John does not argue otherwise. John's bald assertion that "there was no substantial evidence to show that Lee could only be employable at a 'nominal remuneration,'" therefore, is without merit.

John further argues that "there was evidence that Lee could earn more and that she could work full time," and recites various bits of evidence he contends support that conclusion. Even assuming there is evidence supporting that conclusion, however, reversal would not be justified here. The issue is not whether there is evidence that could have supported different findings; rather, it is whether the findings the trial court *did* make exceed the bounds of reason. They do not. The court specifically considered the evidence presented regarding the availability of other jobs, including a jobs list that John provided to Lee and introduced at trial. The court found that other, better positions were likely not to be available to Lee, because of her age and the state of the current job climate. Moreover, although Lee's current work is part time and "on the lower side" with respect to remuneration, the court found that it came with "some very positive benefits including CALPERS retirement and other retirement as well," that may not be available with other positions. John presents no compelling reason why the court was required to make a different finding.

In short, the trial court's findings pursuant to section 4320, subdivision (a)(1) reflect reasoned deliberation, so we are not permitted to substitute our judgment, even if we were inclined to do so. (See *Bower*, *supra*, 96 Cal.App.4th at p. 898.)

16

### 3. *Age and Health of the Parties*

John objects to the trial court's findings regarding his health, pursuant to section 4320, subdivision (h). He contends that the trial court erred because no substantial evidence supported the trial court's conclusions, and asserts that this, together with the trial court's other purported errors, renders the award of spousal support an abuse of discretion. We find no abuse of discretion.

Section 4320, subdivision (h), requires the court to consider, in awarding spousal support, "[t]he age and health of the parties." Here, the court considered the evidence presented, and determined that both parties were both generally in good health. The court acknowledged John's testimony regarding certain medical issues, but concluded that they do not amount to more than "an age appropriate, physical deterioration." In the end, the court found there were no "apparent physical infirmities of either person" that needed to be factored into its spousal support order.

John contends there was no substantial evidence to support the court's findings regarding the parties' age and health, and that the court abused its discretion in concluding this factor should not weigh in his favor. We disagree. There was evidence that John and Lee are approximately the same age, with John being 49 at the time of trial, and Lee 48. Lee testified that she and John are both in "good" health. Though John testified that he suffers from various maladies as a result of being "in the construction industry for 31 years," he also conceded that his health currently interferes with his ability to work only "[t]o a small extent." John presented no evidence establishing that he is currently seriously ill in any respect that is material to his ability to pay spousal

17

support.  There was substantial evidence, therefore, in support of the trial court's conclusions regarding the health and age of the parties.

John points to his own testimony supporting the notion that his "body's just about had it":  he has undergone three knee surgeries, one shoulder surgery, and has been putting off another surgery for "total knee replacement"; also, his "left shoulder is going bad," and his "right hip is going bad."  But he presents no compelling reason why the court should be required to give this evidence dispositive weight.  (Cf. *In re Marriage of Teegarden* (1986) 181 Cal.App.3d 401, 409-410 [trial court's findings not supported by evidence because, inter alia, such a finding required "wholesale disregard of *all* the testimony before the court" regarding husband's serious and disabling illness, including testimony of husband, wife, and caregiver].)  As such, John has demonstrated no abuse of discretion.  (See *Bower*, *supra*, 96 Cal.App.4th at p. 898.)

### 4.  Domestic Violence

John agrees with the trial court's factual finding, pursuant to section 4320, subdivision (i), that there is no documented evidence of any history of domestic violence between the parties or against the parties' child.  (See § 4320, subd. (i).)  He contends, however, that in light of this finding, the trial court abused its discretion by awarding "the maximum amount of support (i.e. $3,200 per month)."  Nevertheless, he neither cites any authority, nor articulates any logical connection, between the premises of this argument and its conclusion.  As such, John has demonstrated no abuse of discretion.

Moreover, John appears to be fundamentally misguided about the purpose of section 4320, subdivision (i).  He in essence suggests, by asserting that this factor weighs

18

in his favor, that a supporting party should get a discount on the amount of support owed for having refrained from committing domestic violence during the marriage. That is not the law. Section 4320, subdivision (i), embodies (together with section 4325) the principle that an award of spousal support to a party who has engaged in domestic violence is disfavored. (See *In re Marriage of MacManus* (2010) 182 Cal.App.4th 330, 335-336 [discussing history of section 4320, subdivision (i), and section 4325].) Here, as the trial court found, that principle has no application: neither party had committed domestic violence against the other. Thus, the factor properly weighs in favor of neither party, and it appears from the record this is exactly how the trial court treated it.

### 5. *Other Section 4320 Factors*

John also asserts, with respect to a number of other factors to be considered in awarding spousal support under section 4320, that the trial court made the correct findings, but abused its discretion in light of those findings (and together with the trial court's other purported errors) by making the award of spousal support that it did. He makes this form of argument with respect to the earning impairment of the supported party (section 4320, subd. (a)(2))[6]; the supported party's ability to work (section 4320, subd. (g)); the supported party's contribution to the supporting party's education, training, career position, or a license (section 4320, subd. (b)); the needs of each party

---

[6] This is the argument John makes in his reply brief; in his opening brief, he argued that the trial court's findings with respect to earning impairment of the supported party are unsupported by substantial evidence. We take the opening brief's argument to be conceded; in any case, our review of the record reveals it to be without merit.

based on the standard of living established during marriage (section 4320, subd. (d)); and the obligations and assets of the parties (section 4320, subd. (e)).

In each case, however, John fails to make any reasoned argument connecting the finding and the purported abuse of discretion, for example, by citing authority or presenting some logical reason showing that the court was required to weigh the factor differently than it did. John has failed, therefore, to demonstrate any error with respect to these factors. (See *Bower*, *supra*, 96 Cal.App.4th at p. 898.) Nor has our independent review of the record revealed any abuse of discretion.

### 6. *Award of Attorney Fees to Lee*

John contends that the trial court abused its discretion by awarding $3,500 in attorney fees to Lee, pursuant to sections 2030 and 2031. He argues that, after payment of child support and spousal support, he had "no money left to pay such an award," so the award was "unjustly punitive and no reasonable Judge could have made such an order." We disagree.

In a dissolution action, a court may order that one party pay some or all of the other party's legal fees and costs. (§ 2030 et seq.) "In making an award, the trial court must determine what is just and reasonable under the circumstances, taking into consideration the parties' needs and ability to pay and the conduct of each party. [Citation.]" (*In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1319; § 2032, subds. (a) & (b).)

We find no abuse of discretion with respect to the trial court's determination of what award of attorney fees, if any, would be just and reasonable in the circumstances of

20

this case. John has not demonstrated that he in fact had "no ability to pay," as he asserts in his briefing. As noted, he has net income after taxes of $8,266 per month before payment of spousal support and child support. There is evidence, therefore, that even after paying $1,641 per month in child support and $3,200 per month in spousal support, he has funds available to pay installments of $100 per month towards the fee award, as permitted under the court's order. (Cf. *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 531-532 [finding it "unreasonable" for the court not to have allowed husband to pay attorney fee order "in manageable installments, consistent with the income he had left after he paid the family support order"].) Once his child support payments ceased, when the child turned 18 and had graduated high school—an event that was expected to occur in June 2012—those funds, too, would become available for payment of the attorney fee award. In other words, John fails to show that the court could not reasonably have concluded he had the ability to pay the attorney fees awarded, despite his other obligations.

Moreover, "[f]inancial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b).) John's arguments—addressing solely the issue of financial resources, and his purported inability to pay in particular—fail to demonstrate that, taking *all* the relative circumstances of the parties into account, no judge could reasonably make the order made.

21

### III.  DISPOSITION

The judgment is affirmed.  Lee shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

KING
J.

MILLER
J.