Filed 4/15/15  Kesselman v. Mayo CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LYNN N. KESSELMAN, | B249590 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC469517) |
| v. | |
| DOVE E. SHUKARTSI MAYO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Bobbi Tillmon, Judge.  Affirmed.

Richard D. Rome for Plaintiff and Appellant.

Enenstein Ribakoff Lavina & Pham, Darren S. Enestein and Michael T. Rosenthal for Defendant and Respondent.

_____

This matter involves a dispute between Lynn Kesselman and the children of his late wife, Corrine Shukartsi Kesselman,[1] over promises of support made by Corrine to Lynn during her lifetime. The trial court sustained a demurrer without leave to amend on the ground that Corrine's promises did not survive her death. We affirm.

**FACTS**

Corrine was married to Moshe "Tony" Shukartsi for 34 years until Tony's death in 2001. Corrine and Tony had two children, Dove E. Shukartsi Mayo and Elan P. Shukartsi. Corrine and Tony established the Shukartsi Living Trust on October 18, 1990, and Corrine executed a will on February 14, 1995. Corrine and Tony amassed substantial assets during their lives.

Sometime after Tony's death, Corrine began a relationship with Lynn. On December 16, 2005, Corrine signed a "Formal and Irrevocable Personal Grant," agreeing to "pay to Lynn Kesselman the sum of $6000 on the first of each month of his life starting on January 1, 2006." Corrine and Lynn were married on April 7, 2008. Prior to their marriage, they executed a premarital agreement on March 31, 2008, which contained the following relevant provisions:

1. Lynn and Corrine would establish a charitable organization funded by Corrine named the "Kesselman Foundation."

2. Corrine would pay all reasonable living expenses for Lynn related to their residence on Burlingame Avenue in Brentwood until "such time as the parties no longer cohabit by mutual agreement."

3. "Promise of Lifetime Payments to Lynn: In consideration for all of the terms of this Agreement, including the waiver of spousal support, Corrine agrees that in addition to the $6,000 per month she granted to Lynn in 2005, she will additionally provide to Lynn an additional $4,000 per month, effective on the first day of the month following their marriage, whether or not the parties remain married. Should they separate or

---

[1] For ease of reference, we shall refer to the parties by their first names.

2

divorce, this $4,000 per month shall constitute Lynn's separate maintenance from Corrine."

4. "Except as provided herein, Corrine and Lynn agree that each party waives and relinquishes to the fullest extent lawfully possible, all right, title and interest, whether actual, inchoate, vested or contingent, in law and equity, under the laws of any state or under federal law in the other's property, income and estate by reason of the proposed marriage . . . ."

Corrine died on September 23, 2010, and Dove was appointed as the personal representative of Corrine's estate. Thereafter, Lynn and Corrine's children engaged in extensive litigation involving the estate, including an unlawful detainer action to force Lynn to move out of the Burlingame home. That action was settled.

This lawsuit was brought by Lynn and the Kesselman Foundation on September 13, 2011, after Dove rejected his creditor's claims against Corrine's estate for fulfillment of the promises made by Corrine in the personal grant and the premarital agreement. Dove demurred to the initial complaint on the grounds it failed to state facts sufficient to constitute a cause of action and was uncertain because it did not articulate a factual basis supporting Lynn's contention that Corrine's obligations survived her death.

The trial court sustained Dove's demurrer without leave to amend on April 17, 2012, finding Lynn failed to satisfy his burden of showing how he could amend the complaint to state a cause of action. In making its ruling, the trial court relied primarily on *Emanuel v. Emanuel* (1975) 50 Cal.App.3d 56 (*Emanuel*), for the proposition that the contested provisions in the grant and the premarital agreement did not survive Corrine's death because they contained no express language indicating such intent. Lynn filed a motion for reconsideration on May 2, 2012. However, the trial court was unaware the motion had been filed and judgment was entered on May 10, 2012. Finding it lacked jurisdiction to consider the motion for reconsideration, the trial court suggested Lynn move to vacate the judgment before seeking reconsideration. Lynn did so pursuant to Code of Civil Procedure section 473, subdivision (d). The trial court granted the motion

3

and vacated the judgment on October 12, 2012. On November 7, 2012, the trial court granted Lynn's motion for reconsideration.

While these events were ongoing, the parties were also engaged in discovery disputes. Lynn refused to respond to discovery propounded by Dove, arguing it was merely an end run around the discovery stays implemented in the parties' other cases and that it was premature given the pending demurrer. After hearings before a discovery referee, the referee recommended the trial court grant Dove's various motions to compel discovery, including deeming admitted requests for admission which stated Corrine's promises under the grant and premarital agreement did not survive her death. The trial court adopted the discovery referee's recommendations on November 16, 2012.

Lynn filed a first amended complaint on December 5, 2012. In it, he abandoned the claims sought by the Kesselman Foundation. Instead, he sought payment of reasonable living expenses as specified in the premarital agreement. Lynn alleged "that the separation of [Lynn] and Decedent occurred by virtue of the death of Decedent. [Lynn] further alleges that the separation was not by mutual agreement, for obviously [Lynn] did not 'consent' to the death of his wife." Although Lynn alleged the payment of his living expenses relative to the Burlingame property ceased in violation of the terms of the premarital agreement, he acknowledged "those payments ceased by mutual agreement pursuant to the settlement of the unlawful detainer action…" Lynn also demanded the continued payments of $6,000 under the grant and $4,000 under the premarital agreement.

Dove again demurred on the ground Corrine's promises to Lynn in the grant and premarital agreement did not survive her death under *Emanuel*. Alternatively, she argued it was deemed admitted that Lynn was not entitled to any future payments after Corrine's death. The trial court sustained the demurrer without leave to amend, finding the admissions established Lynn was not entitled to any payments after Corrine's death. The trial court further held the first amended complaint failed to overcome the deficiency articulated in *Emanuel*. That is, neither the grant nor the premarital agreement expressly

4

stated the payments to Lynn survived Corinne's death.  Judgment was entered on April 25, 2013, and Lynn timely appealed.

**DISCUSSION**

On appeal, Lynn challenges the trial court's order sustaining the demurrer based on the matters deemed admitted.  Lynn further argues the trial court erred in ruling that his rights under the premarital agreement and the grant were terminated by Corrine's death.  We find no merit to Lynn's arguments.

**I.     Trial Court Properly Used the Matters Deemed Admitted to Support its Ruling**

While briefing on the demurrer to the initial complaint was ongoing, Dove served discovery on Lynn.  Among several interrogatories and requests for production of documents, Dove also requested Lynn admit the following:

"Admit that YOU were not entitled to continued PAYMENT under the GRANT after CORRINE'S Death."

"Admit that YOU were not entitled to continued PAYMENT under the PREMARITAL AGREEMENT after CORRINE'S Death."

"Admit that YOU were not entitled to continued PAYMENT of YOUR living expenses relative to the BURLINGAME PROPERTY after the death of CORRINE."

When Lynn failed to provide responses, Dove moved to compel them.  The parties were referred to a discovery referee and a hearing was held on March 9, 2012.  Lynn argued that discovery was premature until a final ruling on the demurrer.  Lynn also asserted Dove was attempting to circumvent orders staying discovery in the other cases between the parties by serving discovery in this case.  The discovery referee recommended granting the motion to compel, including granting the request for admissions.  The referee and the parties acknowledged that if the demurrer to the initial complaint was sustained without leave to amend, as the trial court's tentative indicated, the recommendation would be moot.  The trial court adopted the discovery referee's recommendations and findings as its decision on November 16, 2012, after it granted Lynn's motion for reconsideration.  In ruling on the demurrer to the first amended

5

complaint, the trial court found "[t]he admissions conclusively establish that plaintiff is not entitled to any further payments under either the Grant or the Premarital Agreement after Corrine's death."

Lynn challenges the trial court's decision to adopt the discovery referee's recommendation and use the admissions as a basis to sustain the demurrer without leave to amend. He argues he filed responses to the requests for admission in November 2012, "albeit [eight months] late," and that he should be allowed to litigate his case on the merits. Under the discovery rules, a trial court "shall" make the requested order for deemed admissions, unless it finds that responses have been served before the hearing on the motion. (Code Civ. Proc. § 2033.280; *Allen-Pacific, Ltd. v. Superior Court* (1997) 57 Cal.App.4th 1546, 1550-1552, 1556-1557, disapproved on other grounds in *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 983 fn. 12.) Thus, there was no basis to allow Lynn's tardy responses to invalidate the referee's recommendations. Lynn's responses were served eight months after the hearing before the discovery referee. Neither did Lynn move to withdraw or amend the deemed admissions. (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at pp. 978-979.) In any case, as we discuss below, there is no merit to Lynn's complaint.

Lynn also contends the trial court had the discretion to "determine the scope and effect" of the admissions, citing to *Fredericks v. Kontes Industries, Inc.* (1987) 189 Cal.App.3d 272, 278 (*Fredericks*) and *Milton v. Montgomery Ward & Co., Inc.* (1973) 33 Cal.App.3d 133,138. Unlike those cases, however, Lynn fails to explain, and we do not see, how the trial court could have interpreted the admissions differently to save the first amended complaint. He also fails to explain why the trial court should have done so. We find the trial court did not abuse its discretion in using the admissions as a basis to sustain the demurrer. (*Fredericks, supra,* 189 Cal.App.3d at p. 278.)

## II.     The Terms of The Grant and Premarital Agreement Do Not Survive Corrine's Death

Even if we were to ignore the consequences of the deemed admissions, the grant and the premarital agreement do not survive Corrine's death. Lynn reads the documents

6

otherwise. He contends they are unambiguous and clear: Corrine intended the payments to Lynn to continue for his lifetime. We, however, do not view this statement to include a statement indicating the payments were to continue past Corinne's death.

We review the order sustaining the demurrer de novo, exercising our independent judgment to determine whether a cause of action has been stated under any legal theory. (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 788.) The judgment will be affirmed if the allegations fail to plead an essential element or clearly disclose some defense or bar to recovery. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8.) "In determining these issues, we accept as true all facts properly pleaded or subject to judicial notice, but not contentions, deductions, or conclusions of fact or law. [Citation.]" (*Ibid.*)

Section 1612 of the Family Code permits parties to a premarital agreement to contract with regard to "[t]he disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event." (Fam. Code, § 1612, subd. (1)(3).) "Insofar as an antenuptial agreement relates to the disposition of the property of the respective parties, and does not seek to alter support obligations imposed by law, it will be upheld." (*In re Marriage of Higgason* (1973) 10 Cal.3d 476, 485.)

We find *Emanuel,* instructive in this case. In *Emanuel,* the wife received a property settlement which included the following provision: "'[husband] promises and agrees to pay to [wife] for her support and maintenance and as alimony, the sum of Four Hundred ($400.00) Dollars per month, commencing on the fifteenth day of October, 1957, and continuing thereafter on the fifteenth day of each succeeding month until the death or remarriage of [wife].'" (*Emanuel, supra,* 50 Cal.App.3d at p. 57, emphasis added.) The settlement agreement also provided, "'[a]ll of the covenants, provisions, conditions, and agreements in this instrument contained shall apply to and be binding and obligatory upon, and shall inure to the benefit of not only the parties hereto but also their respective heirs, executors, administrators, and assigns.'" (*Id.* at p. 58.)

The husband died in 1974 and the wife filed a claim against his estate for $69,000, an estimate of what she would have received given her life expectancy. When the claim was rejected, she commenced an action to enforce it. (*Emanuel, supra,* 50 Cal.App.3d at

7

p. 58.)  The trial court sustained the executors' demurrer on the complaint.  (*Id.* at p. 59.)  Relying on Civil Code section 139,[2] the appellate court held that, in the absence of express language which demonstrated the parties intended for the promise to survive the husband's death, the strong legislative policy of terminating spousal support payments on the death of the obligor prevailed.  It refused to allow the wife to offer extrinsic evidence of the intent of the parties, noting that "liberality in permitting an ex-spouse, after the death of the other, to offer evidence that the parties intended a support obligation to survive the death of the obligor has great potential for mischief."  (*Emanuel,* at p. 60.)  "If the parties truly intended the result for which [wife] contends it would have been a simple matter to spell it out in the agreement and to have such provision incorporated in the decree instead of sowing the seeds of future litigation in the soil of vague 'boiler-plate' language untended by the parties and hidden from the judge."  (*Ibid.*)

Lynn contends *Emanuel* is distinguishable on the ground it involved a divorce settlement agreement rather than a premarital agreement.  We disagree and find the reasoning in *Emanuel* applies equally to a prenuptial agreement.  In both situations, the agreement is intended to govern distribution of the parties' assets upon death or divorce.  This is embodied in the provision, to which Lynn agreed, specifying that the parties each waive and relinquish all rights in the other's estate.  The legislative policy identified in *Emanuel* terminating spousal support payments on the death of the obligor has been in place since 1951.  We decline to thwart this long-standing policy in this case.  That the premarital agreement indicated it was for Lynn's lifetime does not mean the parties intended its terms to survive Corrine's death.  Instead, there is no express term indicating such an intent.  Thus, absent an express provision that the payments are to survive Corinne's death, they do not.

---

**2**    Civil Code section 139 was renumbered to section 4801, subdivision (b) in 1969, and then was continued to Family Code section 4337 in 1993 without substantive change. Current Family Code section 4337 reads:  "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party."

8

Similarly, there is no language in the grant that indicates Corrine intended the $6,000 payment to continue past her death.  Lynn has failed to provide any legal support for the proposition that the grant survived Corrine's death simply because it stated it was for his lifetime.  Rather, the *Emanuel* court's reasoning applies to the grant—liberality in permitting Lynn to offer evidence that Corrine intended a support obligation to survive her death has "great potential for mischief."  (*Emanuel, supra,* at p. 60.)  This is particularly true when Corrine's will does not provide for Lynn.  It instead specifies she has "intentionally and with full knowledge omitted to provide for any of my heirs living at the time of my death."  "This court has neither the power to make for the parties a contractual arrangement which they themselves did not make nor to insert in the agreement language that appellants now wish were there.  [Citations.]"  (*Sayble v. Feinman* (1978) 76 Cal.App.3d 509, 515.)

## DISPOSITION

The judgment is affirmed.  Respondent to recover her costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.

9